Melinda Davis Nokes, Bar No. 167787
WEITZ & LUXENBERG, P.C.
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (949) 338-4303
Facsimile: (310) 786-9927


Attorneys for Plaintiff
K.R. proceeding under pseudonym

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| K.R., an individual, | ) | Case No.: |
|---|---|---|
| Plaintiff, | ) | **COMPLAINT FOR DAMAGES:** |
| vs. | ) | |
| | ) | 1. **18 U.S.C. §1595** |
| G6 Hospitality, LLC; and Marriott International, Inc., | ) | 2. **CAL. CIV. CODE §52.5** |
| Defendants. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES

**COMPLAINT**

COMES NOW the Plaintiff K.R., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1.   For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country.   Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2.   G6 Hospitality LLC (hereinafter "G6 Hospitality") and Marriott International, Inc. (hereinafter "Marriott"), knew and should have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country.   Rather than taking timely and effective measures to thwart this epidemic, G6 Hospitality and Marriott have instead chosen to ignore the open and obvious presence of sex trafficking on their hotels, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.   This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials K.R., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

4.   K.R. was first trafficked for commercial sex at the age of eighteen (18) years old in her native California.   Her first trafficker was a flirtatious potential romantic partner who met her in a park in Oakland shortly after her high school graduation and promised her a house, successful career and a relationship. Further preying on the teenage girl's desire for adulthood and a relationship, K.R.'s first trafficker would routinely force methamphetamines on her by putting it in her alcohol.   This was to keep K.R. dependent on the drugs while her trafficker profited off of her sexual servitude.   This trafficker was violent, and K.R. escaped him only to be preyed upon by other traffickers within his circle who bought, sold, and required her to sexually service paying strangers as she endured brutal

physical assaults, psychological torment, verbal abuse, and false imprisonment at the Defendants' hotels for nearly a decade as the Defendants did nothing but profit.

5.   The Plaintiff now brings this action for damages against the Defendants listed herein.  Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from participation in a venture that they knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.   K.R. was advertised on Backpage.com against her will, physically tortured, and sexually exploited under such duress at hotels in Oakland and Millbrae, California including the Motel 6® Oakland Airport and the Westin® San Francisco Airport.

7.   As a direct and proximate result of Defendants G6 Hospitality and Marriott International's consistent refusals to prevent human trafficking on their hotel properties, K.R. was trafficked, sexually exploited, and repeatedly victimized at G6 Hospitality and Marriott hotels.

8.   The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. § 1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from a sex trafficking venture in which K.R. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. § 1591 (a).

## **PARTIES**

9.   The Plaintiff, having moved to proceed anonymously,[1] and, herein, identified by her initials K.R., was eighteen (18) years old when she was first sex trafficked throughout Northern California. The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. § 7102 (15) and 18 U.S.C. § 1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14). The Plaintiff currently resides in San Joaquin County, California.

10.  Defendant Marriott International, Inc. ("Marriott") is another of the largest hotel companies in

---

[1] Contemporaneously with the Complaint, Plaintiff K.R. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.

the world offering public lodging services directly or through its affiliates, subsidiaries, and

franchisees.  It is a Delaware corporation with its headquarters at 10400 Fernwood Road, Bethesda

Maryland, 20817.

    a. Defendant Marriott International, Inc. is the successor entity to Starwood Hotels and Resorts Worldwide, Inc. and retains successor liability for the wrongful acts of the predecessor.

    b. As of 2016, Starwood Hotels and Resorts, LLC f/k/a Starwood Hotels and Resorts Worldwide, Inc. is a wholly owned subsidiary of Marriott International, Inc.

    c. Westin® brand hotels are Marriott hotels.

    d. As a hotel operator, Defendant Marriott controls the training and policies for its hotels including the Westin® hotel where K.R. was trafficked. Defendant Marriott represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Marriott brand standards and all local, state, and federal laws.[2]

    e. Through its relationship with the staff at the Westin® where K.R. was trafficked and the hotel guest perpetrator who trafficked K.R. at Westin® hotels, Defendant Marriott knowingly benefited, or received something of value, from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking.

    f. Marriott receives a percentage of the gross room revenue from the money generated by the operations of Westin® hotels, including a percentage of the revenue generated for the rate charged on the hotel rooms in which the Plaintiff was sex trafficked.

    g. Marriott owns, supervises, and/or operates the Westin® San Francisco Airport located at 1 Old Bayshore Highway in Millbrae, California.

---

[2] *See* Marriott Human Rights Policy, *available at* www.marriott.com/Multimedia/PDF/Corporate/HumanRights.pdf, and Marriot Human Rights Policy Statement, July 2017, *available at* www.marriott.com/Multimedia/PDF/Corporate/HumanRightsStatement.pdf.

h. Marriott is subject to the jurisdiction of this Court because it regularly transacts business in the state of California; operates dozens of hotels in the state of California, including the Westin® San Francisco Airport; caused indivisible injuries to the Plaintiff in the state of California; and profited from an illegal sex trafficking venture at the Westin® San Francisco Airport.

11. Defendant G6 Hospitality, LLC ("G6 Hospitality") is one of the largest hotel brands in the world and offers public lodging services directly or through its affiliates, subsidiaries, and franchisees. G6 owns, manages, or operates more than 1,400 economy or budget motels under its Motel 6® brand. G6 Hospitality is a Delaware corporation with its headquarters at 4001 International Parkway, Carrollton, Texas.

a. Motel 6® brand hotels are G6 Hospitality hotels.

b. As a hotel operator, G6 Hospitality controls the training and policies for its hotels including the Motel 6® Oakland Airport where K.R. was trafficked.

c. Defendant G6 Hospitality maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with G6 Hospitality brand standards and all local, state, and federal laws.[3]

d. Through its relationship with the staff at the Motel 6® hotels where K.R. was trafficked, and through the hotel guest perpetrators who trafficked K.R. at Motel 6® hotels, G6 Hospitality knowingly benefited, or received something of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

e. G6 Hospitality receives a percentage of the gross room revenue generated by the operations of Motel 6® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was trafficked for the purpose of commercial sex.

---

[3] G6 Hospitality International, Inc., Our Impact, https://g6hospitality.com/about-us/our-impact-2/ (last visited Dec. 5, 2019).

f.  G6 Hospitality owns, supervises, and/or operates the Motel 6® Oakland Airport located at 8480 Edes Avenue in Oakland, California.

g.  G6 Hospitality is subject to the jurisdiction of this Court because it regularly transacts business in the State of California; operates dozens of hotels in State of California, including the Motel 6® Oakland Airport; caused indivisible injuries to the Plaintiff in State of California; and profited from an illegal sex trafficking venture at the Motel 6® Oakland Airport.

12. Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act(s), deed(s), or conduct by or through one or more of their officers, directors, agents, employees, and/or representatives who was/were actively engaged in the management, direction, control, and/or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

13.  This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

14.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

15.  Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

16.  To best understand the mechanism by which sex trafficking ventures are prohibited by federal

6

criminal law, it's best to address these elements in the reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and § 1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. § 1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

17.  Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. § 1591, it is nevertheless a long-recognized and familiar atrocity.

18.  Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking.  This includes, at a minimum, **_both_** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work **_and_** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[4]

## FACTUAL ALLEGATIONS

### A.    THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project* [5]

19.  Human trafficking is the world's fastest growing crime.[6]  While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each

---

[4] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law **both** categories are 'traffickers'.

[5] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).

[6] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.

year making it the second largest illicit crime industry behind only the sale of *all* illegal drugs.[7]

20.  Sex traffickers, or "pimps", use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

21.  The hospitality industry plays a crucial role in the sex trade.[8]  The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

22.  According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[9]  Traffickers and buyers alike frequently use hotel rooms to exploit victims.

23.  Traffickers use hotels as the hub of their operations.  Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an "in call."

24.  Hotels are also the venue of choice for buyers seeking a so-called "out call," wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction.  Unsurprisingly, those on the demand side of this transaction (*i.e.* those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.  In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[10]

25.  The problem is industry wide.  In the United States, as much as 63% of all trafficking

---

[7] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.
[8] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[9] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.
[10] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

8

incidents happen in hotels ranging from luxury to economy.[11]

26.   Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[12]   Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

27.   Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

28.   But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from dangers that were known, or should have been known, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.   As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[13]

29.   Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry.  The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs.[14]

30.   From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel.  With proper training and the implementation of reasonable

[11] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[12] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).
[13] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[14] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

security measures, hospitality companies could prevent regular sex trafficking under their flag.

31.  Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[15]

32.  Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[16] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

33.  Hospitality companies can and should mandate that *all* staff working at *all* hotels across their brand complete sex trafficking training.[17]

34.  The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

35.  In 2011, Wyndham Hotels trained only some of its employees to look for signs of trafficking.[18]

36.  In 2012, an anti-trafficking coalition alerted Defendants Marriott of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies,

---

[15] *Id. See also*, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[16] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[17] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[18] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.

while urging immediate action regarding trafficking.[19]

37. Marriott claims it has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT ((End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes)) developed a training module in 2010 for hotel management and staff.[20]

38. Marriott claims it amended its Human Rights Policy as early as 2006 to reflect growing concerns regarding human trafficking and reviews the policy annually. To date the policy merely states "Marriott supports the elimination of all forms of forced, bonded or compulsory labor and provides associate training on human trafficking awareness and prevention." [21]

39. In 2013, IHG commissioned an external assessment of human rights risks most relevant for the travel and hospitality sector globally and regionally working with external human rights experts, Maplecroft. The risks identified included human trafficking.[22]

40. In 2015 and 2016 IHG identified the modern slavery risks most relevant to IHG across four different areas of risk: (I) risks of modern slavery affecting their organization including IHG hotels, (ii) risks of modern slavery occurring in IHG corporate or hotel supply chains, (iii) risks of modern slavery such as human trafficking occurring in or around IHG branded hotels, (iv) risks of modern slavery occurring at different stages of the hotel lifecycle.  IHG represents that its various risk assessment mechanisms have helped them to identify higher risk locations since 2013.

41. Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland

---

[19] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).
[20] *Human Rights Policy*, MARRIOTT, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).
[21] Our Commitment to Human Rights, MARRIOTT INTERNATIONAL INC. available at https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsCommitment.pdf (last visited Nov. 20, 2019) citing Marriott International, Inc.'s Human Rights Policy Statement available at https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsStatement.pdf (last visited Nov. 20, 2019).
[22] Inter-Continental Hotel Group, Modern Slavery Statement 2017 available at https://www.ihgplc.com/-/media/ihg/Files/pdf/modern-slavery-statement-2017-ihg-010318.ashx?la=en&hash=B688F42E878C145EC5C8C9DF02ABC227 (last visited Nov. 22, 2019).

Security's Blue Campaign.[23]   These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[24]

42.   Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies.  Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

### B.   THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

43.   Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a contract or franchise agreement and still profits from putting heads in beds.

44.   The average consumer does not see this relationship.  The parent brand gives the property its identity.  It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand.  The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

45.   In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website.  Thus, booking and room reservations are controlled by the

---

[23] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.
[24] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

COMPLAINT FOR DAMAGES

corporate parent brand.[25]

46.     The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

47.     Per the contract or franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the agreement if the local hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

48.   At the time of the incidents alleged herein:

     a.  Defendant Marriott owned and controlled the Westin® brand.[26]

     b.  Defendant G6 Hospitality owned and controlled the Motel 6® brand.

49.   Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments so it is seldom done.

### C.  THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

50.     Defendants Marriott International and G6 Hospitality have been on notice of repeated incidences of sex trafficking occurring at their Motel 6® and Westin® hotels yet these brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

51.     MARRIOTT INTERNATIONAL ("MARRIOTT")

     a.  WESTIN®

          i. Defendant Marriott owns, supervises, and/or operates the Westin® San Francisco Airport located at 1 Old Bayshore Highway in Millbrae, California.

          ii. Marriott failed to implement and enforce any of its own policy or policies and protect Plaintiff K.R. from being sex trafficked.

---

[25] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.
[26] Starwood Hotels and Resorts, LLC f/k/a Starwood Hotels and Resorts, Inc. is now a wholly owned subsidiary of Marriott International Inc.

iii. Marriott knew or should have known that the Westin® hotel where Plaintiff K.R. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity.

iv. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Marriott has repeatedly failed to stop or adequately address sex trafficking at it hotels.

v. Defendant Marriott may exercise or could have exercised control over Westin® hotels by:

    1. distributing information to assist employees in identifying human trafficking;

    2. providing a process for escalating human trafficking concerns within the organization;

    3. requiring employees to attend training related to human trafficking;

    4. providing new hire orientation on human rights and corporate responsibility;

    5. providing training and education to Westin® hotels through webinars, seminars, conferences, and online portals;

    6. developing and holding ongoing training sessions on human trafficking; or

    7. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

vi. Marriott was in an actual and/or apparent agency relationship with Westin® hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Marriott's exercise of an ongoing and systemic

right of control over Westin® hotels by Defendant Marriott's operations, including the means and methods of how Westin® hotels conducted daily business through one or more of the following actions:

1. hosting online bookings on Defendant Marriott's domain;

2. requiring Westin® hotels to use Defendant Marriott's customer rewards program;

3. setting employee wages;

4. making employment decisions;

5. advertising for employment;

6. sharing profits;

7. standardized training methods for employees;

8. building and maintaining the facility in a manner specified by the owner;

9. standardized or strict rules of operation;

10. regular inspection of the facility and operation by owner;

11. fixing prices; or

12. other actions that deprive Westin® hotels of independence in business operations.

vii. An apparent agency also existed/exists between Defendant Marriott and Westin® hotels. Defendant Marriott held out Westin® hotels to the public as possessing authority to act on its behalf.

viii. Given Defendant Marriott's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Westin® hotels, Defendant Marriott breached its duties in the following ways:

1. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

2. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

3. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

4. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

5. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

6. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and/or

7. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

ix. For years, Defendant Marriott has failed to address the rampant culture of sex trafficking which tragically occurs throughout its hotels across the country. This entrenched apathy to the real risk of sex trafficking and pervasive willful blindness to the role Westin® hotels play in sex trafficking facilitated the sex trafficking of Plaintiff K.R. that forms the basis of this complaint.

1. In December of 2018, a man was arrested after following a women into the Westin® Hotel elevator. He followed the victim into the elevator and got off the 14th floor, the victim sensed something was wrong and

COMPLAINT FOR DAMAGES

didn't go into her room immediately. He proceeded to follow and attacked her, struggling to take her pants off in the hallway, a hotel guest was able to free her from the suspect and call police. [27]

2. In July of 2015, a Texas couple were arrested for forcing a woman into prostitution at locations across the Midwest, including the Westin® Hotel downtown. They were charged with one count of trafficking for the purpose of sexual exploitation and promoting prostitution.[28]

3. In April of 2009, a Boston University medical student, was arrested in Walpole and charged with the murder of Julissa Brisman as well as an April 10 armed robbery and kidnapping at the Westin® Hotel in Boston. The first reported attack came on April 10 at the nearby Westin® Copley Place hotel after a woman was bound and robbed. Both women had advertised massage services on Craigslist, the online classified service, and both were guests at luxury hotels.[29]

52. G6 HOSPITALITY ("G6 Hospitality"):

a. Defendant G6 HOSPITALITY owns, supervises, or operates the Motel 6® Oakland Airport located at 8480 Edes Avenue, Oakland, California 94621.  G6 Hospitality failed to implement and enforce any of its own policy or policies and protect Plaintiff K.R. from being sex trafficked.

b.  G6 Hospitality knew or should have known that the Motel 6® hotel where Plaintiff K.R. was trafficked was an area known for high incidence of crime and prone to sex

---

[27]https://www.kiro7.com/news/local/man-charged-with-assault-after-following-woman-into-westin-elevator/884123607

[28] https://www.stltoday.com/news/local/crime-and-courts/two-suspects-from-texas-arrested-for-human-trafficking-in-st/article_db93f47a-5a5a-5457-8f26-8d0ed7bcad03.html

[29] https://www.enterprisenews.com/x1484624275/Quincy-man-arrested-in-Craigslist-killing-case

trafficking activity on and around the hotel premises, including when Plaintiff K.R. was trafficked.

c. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant G6 Hospitality has repeatedly failed to stop or adequately address sex trafficking at its hotels.

d. Defendant G6 Hospitality may exercise or could have exercised control over Motel 6® hotels by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v. providing training and education to Motel 6® hotels through webinars, seminars, conferences, and/or online portals;

    vi. developing and holding ongoing training sessions on human trafficking; or

    vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e. G6 Hospitality was in an actual or apparent agency relationship with Motel 6® hotels offering public lodging services in the hotel. This agency relationship was created through Defendant G6 Hospitality's exercise of an ongoing and systemic right of control over Motel 6® hotels by Defendant G6 Hospitality's operations, including the means and methods of how Motel 6® hotels conducted daily business through one or more of the following actions:

    i. hosting online bookings on Defendant G6 Hospitality's domain;

ii.   requiring Motel 6® hotels to use Defendant G6 Hospitality's customer rewards program;

iii.   setting employee wages;

iv.   making employment decisions;

v.   advertising for employment;

vi.   sharing profits;

vii.   standardized training methods for employees;

viii.   building and maintaining the facility in a manner specified by the owner;

ix.   standardized or strict rules of operation;

x.   regular inspection of the facility and operation by owner;

xi.   fixing prices; or

xii.   other actions that deprive Motel 6® hotels of independence in business operations.

f.   An apparent agency also exists between Defendant G6 Hospitality and Motel 6® hotels. Defendant G6 Hospitality held out Motel 6® hotels to the public as possessing authority to act on its behalf.

g.   Given Defendant G6 Hospitality's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Motel 6® hotels, Defendant G6 Hospitality breached its duties in the following ways:

i.   Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii.   Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii.   Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.  More than half the bookings at Motel 6® hotels occur on the same day as arrival. Accordingly, Motel 6® executives have worked to make booking hotel rooms at their properties even easier. As one executive of Motel 6® stated: "Analytics is our North Star. It is how we make decisions, it's how we drive our strategy and it is how we dictate performance." As alleged herein, the Motel 6 brand has been more than willing to use data analytics to increase its profits; yet, it has historically refused to use the same data analytics, or take any reasonable measures, to prevent human trafficking at Motel 6® hotels.[30]

i.  There are countless examples across place and time of G6 Hospitality's knowledge of sex trafficking at its Motel 6® hotels and its continued, total inattention to preventing and remedying the blight of human trafficking. This illicit, criminal misconduct is so rampant throughout Motel 6® hotels that one online reviewer suggested on a travel website that Motel 6® "Should Be Called Motel Sex."[31] For years, G6 Hospitality has

---

[30] Allison Schiff, *Motel 6: 'Analytics Is Our North Star'*, AdExchanger (Sept. 7, 2017), https://adexchanger.com/analytics/motel-6-analytics-north-star/amp/.

[31] Review of Motel 6 Rochester (Aug. 1, 2018), *available at* https://www.tripadvisor.com/ShowUserReviewsg43466-d242739-r601808847-Motel_6_Rochester-Rochester_Minnesota.html (last visited Feb. 28, 2019) (the reviewer was commenting in August 2018, on a Motel 6 located at 2107 West Frontage Road, Rochester, Minnesota

failed to adequately address the rampant sex trafficking which tragically occurs throughout its Motel 6® hotels across the country, and as a result has facilitated the sex trafficking of Plaintiff K.R. at the Motel 6® Oakland Airport which forms the basis of this complaint.

   i. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6® in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[32]

   ii. In April 2009, a sex trafficking venture operated out of a Motel 6® in Toledo, Ohio.[33]

   iii. In approximately September 2011, sex traffickers set up an operation at a Motel 6® in Toledo, Ohio to sex traffic fifteen (15) and sixteen (16) year old girls.[34]

   iv. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6® in Harvey, Illinois.[35]

   v. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6® in Portland, Oregon.[36]

   vi. The Central Ohio Human Trafficking Task Force completed an investigation which resulted in indictments in August 2012, of several persons charged with human trafficking which occurred at the Motel 6® on Dublin-Granville Road in Columbus, Ohio as well as other locations.[37]

   vii. The FBI investigated and arrested several individuals in December 2012, for

---

55901 and added, "Prostitutes, drug dealers, and loud partiers are your neighbors including possibly one or two staff members. Complaints to the clerk do no good. The night clerk does not write it down and the day clerks accuse you of lying although I made it clear that I did not want anything in return for my complaints.")
[32] https://www.vanityfair.com/news/2011/05/human-trafficking-201105.
[33] https://abc7chicago.com/archive/7771888/.
[34] https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html.
[35] https://www.justice.gov/usao-ndil/file/813771/download.
[36] https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.
[37] https://www.dispatch.com/content/stories/local/2012/08/03/secret-panel-on-human-trafficking-wins-indictments.html.

COMPLAINT FOR DAMAGES

human trafficking of several young women and a juvenile at a Motel 6® in Madison, Alabama.[38]

viii.  The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6® in Anaheim, California.[39]

ix.  In approximately March 2013, sex traffickers began selling sex out of Motel 6®'s in Bangor and Portland, Maine.[40]

x.  Beginning in approximately May 2013, a fifteen (15) year old runaway was sex trafficked out of the Motel 6® on Caton Avenue in Baltimore, Maryland.[41]

xi.  The FBI busted a sex trafficking ring operating out of a Motel 6® in San Antonio, Texas in September 2013.[42]

xii.  In Richmond County, Georgia a man was arrested at a local Motel 6® in October 2013, and charged with sex trafficking of two young women.[43]

xiii.  Police investigated a sex trafficker in March 2014 and ultimately charged him for his crimes including, but not limited to, selling a seventeen (17) year old girl for sex out of a Motel 6® in Roseville, Minnesota.[44]

xiv.  In May 2014, two (2) traffickers were arrested at a Motel 6® in Monterey, California after a twenty-one (21) year old woman escaped from their captivity.[45]

xv.  In the summer of 2014, two (2) girls ages fifteen (15) and sixteen (16) were taken from a children's shelter by a sex trafficker and trafficked out of a Motel 6® in Cutler Bay, Florida

---

[38] https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.
[39] https://abc13.com/archive/8909784/.
[40] https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.
[41] https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.
[42] https://www.ksat.com/news/sex-trafficking-ring-busted-at-motel-6.
[43] https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.
[44] https://www.twincities.com/2014/06/05/man-25-is-accused-of-trafficking-teens-2/.
[45] https://www.ksbw.com/article/monterey-police-2-human-sex-traffickers-arrested-after-victim-escapes-motel/1054172.

xvi.   A Las Vegas man was charged with sex trafficking two (2) victims, including a seventeen (17) year old girl, in January 2015, out of a Motel 6® in Rapid City, Nevada.[46]

xvii.   In February 2015, two (2) men were arrested for sex trafficking a fourteen (14) year old girl at a Motel 6® in Seekonk, Rhode Island.[47]

xviii.   A local law enforcement investigation resulted in the rescue of a fifteen (15) year old runaway from a Motel 6® near the Oakland, California airport where she was being sex trafficked.[48]

xix.   In North Charleston, South Carolina, a seventeen (17) year old girl was rescued in March 2015 from a Motel 6® by special agents from the United States Department of Homeland Security.  The girl was sold for sex, beaten, and starved by a sex trafficker.[49]

xx.   Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6® in Austin, Texas.[50]

xxi.   In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6® in Warwick, Rhode Island.[51]

xxii.   Over a fourteen (14) month period ending in approximately April 2015, a crime-ridden Motel 6® in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[52]

xxiii.   Seven people were indicted in January 2016, by a Colorado grand jury for sex

---

[46] https://www.argusleader.com/story/news/crime/2015/01/17/las-vegas-man-charged-human-trafficking-rapid-city/21922915/.

[47] http://www.thesunchronicle.com/news/local_news/ri-man-gets-jail-in-sex-trafficking-case-involving-seekonk/article_d7a25494-9d21-11e6-8f94-63e5c74facb3.html.

[48] https://www.berkeleyside.com/2015/12/08/woman-charged-in-berkeley-teen-sex-trafficking-case.

[49] https://www.postandcourier.com/archives/police-say-teen-starved-beaten-at-north-charleston-motel-man/article_032153ee-fcb6-5333-9182-926a7f43dfbf.html.

[50] https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[51] https://www.newportri.com/article/20150324/NEWS/150329666.

[52] https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

23

1     trafficking children from 2014 through the summer of 2015, out of hotels in

2     Denver, Colorado, including a Denver area Motel 6®.[53]

3    xxiv. In the summer of 2015, a woman was arrested at a Motel 6® in Great Falls,

4     Montana where she was involved in sex trafficking a seventeen (17) year old

5     girl.[54]

6    xxv. A married couple was indicted in June 2015, for their roles in sex trafficking

7     minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of

8     a Motel 6® in Everett, Washington.[55]

9

10    xxvi. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel

11     6 in June 2015, and a grand jury subsequently charged her assailant with human

12     trafficking and rape.[56]

13   xxvii. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for

14     sex at a Motel 6® in Pismo Beach, California.[57]

15   xxviii. In November 2015 a man was arrested at a Motel 6® in Ventura, California and

16     was criminally charged with sex trafficking a fifteen (15) year old girl who was

17     found with him.[58]

18

19    xxix. A federal court sentenced a man to ten (10) years in prison in November 2016,

20     for sex trafficking a fifteen (15) year old girl in 2014 out of a Motel 6® in

21     Hartford County, Connecticut.[59]

22    xxx. In January 2016, a man who operated out of a Motel 6® in Frederick City,

23

24

---

[53] https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.
[54] https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.
[55] https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.
[56] https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.
[57] https://www.sanluisobispo.com/news/local/article75832962.html.
[58] https://www.vcstar.com/story/news/local/communities/ventura/2016/04/26/fresno-man-sentenced-to-prison-for-pimping-human-trafficking-in-ventura-county/88714698/.
[59] https://www.courant.com/news/connecticut/hc-sex-trafficking-teenager-prison-1115-20161114-story.html.

Maryland was charged with sex trafficking.[60]

xxxi.  Criminal charges were brought against a man who sex trafficked a fifteen (15) year old girl out of a Motel 6® in Beaumont, Texas in March 2016.[61]

xxxii.  On March 23, 2016, a victim of a sex trafficking ring died at a Motel 6® in Winchester, West Virginia.[62]

xxxiii.  The leader of a sophisticated and organized sex trafficking ring beat and raped one of his victims in April 2016, at a Motel 6® in Tinicum Township, Pennsylvania.[63]

xxxiv.  Local law enforcement rescued a seventeen (17) year old runaway in December 2016, who was being sex trafficked from a Motel 6® in Gibbstown, New Jersey.[64]

xxxv.  In February 2017, the leader of a child sex trafficking ring in Tulsa, Oklahoma, was busted at a local Motel 6® where federal authorities rescued a sixteen (16) year old survivor of sex trafficking.

xxxvi.  A forty-five (45) year old man was charged with human trafficking after picking up a teenage boy from school and taking him to a Motel 6® in Cedar Park, Texas in approximately March 2017.[65]

xxxvii.  At a Motel 6® in Des Moines, Iowa a man sex trafficked a minor victim in June 2017.[66]

xxxviii.  In approximately June 2017, a seventeen (17) year old runaway was rescued by law enforcement from a Motel 6® in Las Vegas, Nevada out of which a sex

---

[60] https://baltimore.cbslocal.com/2016/01/16/frederick-police-arrest-man-on-human-trafficking-charges/.
[61] https://kfdm.com/news/local/women-accuse-defendant-of.
[62] https://www.localdvm.com/news/virginia/martinsburg-man-convicted-on-sex-trafficking-drug-charges/1708490814.
[63] https://patch.com/pennsylvania/phoenixville/man-behind-human-trafficking-ring-chester-county-sentenced.
[64] https://www.nj.com/gloucester-county/index.ssf/2017/09/post_139.html.
[65] https://www.khou.com/article/news/local/texas/little-elm-man-accused-of-trafficking-austin-teen/285-476893013
[66] https://www.desmoinesregister.com/story/news/crime-and-courts/2018/06/11/7-des-moines-residents-charged-sex-trafficking-feds-des-moines-sexual-prostitution-iowa-texas/692264002/.

trafficker was operating.[67]

xxxix.  A seventeen (17) year old girl was sold for sex by traffickers at a Motel 6® in Portland, Oregon in June 2017.[68]

xl.  In August 2017, two (2) men operated out of a Motel 6® in Springfield, Virginia to sex traffic a sixteen (16) year old girl.[69]

xli.  The City of Los Angeles settled a nuisance suit with G6 Hospitality, which operates Motel 6® hotels, in August 2017, for $250,000.00 in an effort to combat human trafficking at Motel 6® brand hotels.[70]

xlii.  In October 2017, the County Attorney's Office for Harris County, Texas sued a local Motel 6® after law enforcement identified the property as a criminal hotspot that had been attracting drug activity, human trafficking, and violent crime for years.  The suit alleged the Motel 6® knowingly tolerated and failed to make reasonable efforts to abate the criminal activities on its property.[71]

xliii.  Two (2) men were arrested in December 2017, for sex trafficking a minor female out of a Motel 6® in Destin, Florida.

xliv.  In February 2018, a man engaged in sex trafficking of two (2) women at a Motel 6® near New Orleans, Louisiana.[72]

xlv.  The Columbus City Attorney's Office issued ultimatums in February 2018, to several area hotels to clean up or shut down, including but not limited to, the Motel 6® at 7480 North High Street near Worthington which, according to police had been the site of significant criminal activity.[73]

---

[67] https://www.reviewjournal.com/crime/sex-crimes/woman-accused-of-sex-trafficking-runaway-on-las-vegas-strip/.
[68] http://mailtribune.com/news/crime-courts-emergencies/accused-human-traffickers-stopped-in-medford.
[69] https://patch.com/virginia/burke/16-year-old-forced-be-prostitute-springfield-motel-report.
[70] https://apnews.com/d13636fec55c42b88a08af18db6196fb.
[71] https://www.chron.com/neighborhood/spring/news/article/Harris-County-sues-Spring-area-motel-labeled-12293254.php.
[72] https://www.nola.com/crime/2018/10/man-accused-of-trafficking-took-females-to-new-orleans-to-make-some-money-for-mardi-gras-warrant.html.
[73] https://www.10tv.com/article/columbus-cracks-down-businesses-high-crime-rates.

COMPLAINT FOR DAMAGES

xlvi.  Law enforcement responded to a 911 call from a seventeen (17) year old girl who was calling from the lobby of a Motel 6® in Claremont, California in February 2018.  Upon arrival, officers discovered that the seventeen (17) year old caller and a fifteen (15) year old girl were both being sex trafficked at the hotel.[74]

xlvii.  In March 2018, police found a ten (10) year old girl wearing a dog collar with a twenty-three (23) year old man who had raped her at a Motel 6® in Lakeland, Florida.[75]

xlviii.  In Richfield, Minnesota a man was criminally charged in June 2018, for sex trafficking a fifteen (15) year old girl out of an area Motel 6®.[76]

xlix.  Police busted a human trafficking operation at a Motel 6® in Ann-Arbor, Michigan in July 2018.[77]

l.  A Motel 6® in Braintree, Massachusetts surrendered its operating license in September 2018, after significant criminal activity, including sex trafficking, was documented occurring on its property.[78]

li.  Not until September 2018 did G6 Hospitality LLC, the parent company of Motel 6®, announce that "the company will introduce anti-human trafficking training to corporate, field and property team members...Additionally, the company developed its own training for all property team members to understand how to effectively intervene and identify potential trafficking situations to protect each other, guests and the community."

lii.  Even after this announcement, sex trafficking at Motel 6® hotels continued.

liii.  In November 2018, federal authorities arrested a man for sex trafficking a

---

[74] https://webbcanyonchronicle.com/2953/features/social-media-sexual-assault/.
[75] https://www.miamiherald.com/news/local/community/miami-dade/west-miami-dade/article207303799.html.
[76] https://kstp.com/news/man-charged-sex-trafficking-richfield-hotel/4955796/.
[77] https://www.mlive.com/news/ann-arbor/2018/12/man-charged-with-human-trafficking-at-ann-arbor-area-hotel.html.
[78] https://patch.com/massachusetts/braintree/motel-6-ends-fight-reopen-braintree-location.

woman out of a Motel 6® in San Jose, California.[79]

liv.  In December 2018, a husband and wife were arrested for sex trafficking women who were Chinese nationals out of a Motel 6® in Portsmouth, New Hampshire from approximately 2016 through 2017.[80]

lv.  A fourteen (14) year old girl was held against her will at a Motel 6® in Raleigh, North Carolina and sex trafficked in or around January 2019.[81]

lvi.  Additionally, the Motel 6® brand and its corporate parent have been aware of sex trafficking occurring on Motel 6® hotels through online review websites such as www.yelp.com.  Online reviews show the pervasiveness of customer reported sex trafficking on Motel 6® hotels and Motel 6®'s inattentiveness, for example:

lvii.  Regarding a November 2012, stay at a Motel 6® in Madison, Alabama a customer wrote: "Local police raided several rooms in the a.m. And arrested numerous 'guests' for what we later found out were drug, prostitution, and sex trafficking charges!! Like a movie. An extra $20 bucks gets you a better room, healthier conditions, and no 2:00 AM SWAT team visit."[82]

### D.  THE SEX TRAFFICKING OF K.R.

53.   The facts alleged herein stem from multiple sex trafficking rings operating in the California Bay Area.  While victimized by her traffickers in California, K.R. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels from 2006-2016.

54.   In 2006, at eighteen (18) years old, K.R., a native of Stockton, California was sitting in a park when she was approached by a man who sold her a teenage dream. He told K.R. that they were going

---

[79] https://www.sanjoseinside.com/2018/11/09/alleged-pimp-arrested-in-san-jose-for-sex-trafficking-young-woman-he-found-on-instagram/.
[80] https://www.fosters.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme.
[81] https://www.wral.com/third-man-arrested-in-raleigh-alleged-child-trafficking/18104963/.
[82] https://www.tripadvisor.com/ShowUserReviews-g30677-d244048-r201566882-Motel_6_Huntsville_Madison-Madison_Alabama.html.

to fall in love, buy a house, and make money together but he had far more nefarious intentions. The man drugged K.R. and brought her to a prostitution and sex trafficking prone area in Oakland, California, International Boulevard between 72nd and 74th streets. K.R.'s parents reported her missing to the police observing her bike still locked up at the park.

55.    K.R. was forced by her trafficker to walk the track between 72nd and 74th streets and sexually service the buyers that hailed her at the Westin® San Francisco Airport located at 1 Old Bayshore Highway and the Motel 6®Oakland Airport located at 8480 Edes Avenue.

56.    While K.R.'s trafficker did not set a formal quota for her to meet he made it abundantly clear to her that she would be punished with if she did not bring him back a good profit.

57.    K.R.'s trafficker found that he could control her by putting methamphetamines in her alcohol and punishing her with physical violence every time she tried to shirk his rules.

58.    The Motel 6® Oakland Airport had doors that led directly to the exterior from the guest rooms and at the Westin® San Francisco Airport K.R.'s trafficker would constantly walk unabashedly through the hotels' front door and main lobby with his stable of other trafficked women, shepherding them and their buyers to rooms.

59.    Every day K.R.'s would rent a room in cash for K.R. to service the buyers she met on the track. Sometimes he would pay for weekends in lump sums. K.R.'s traffickers frequently would make K.R. check into the room with her ID.  K.R. was forced by her trafficker to perform commercial sex acts on an average of five (5) to ten (10) buyers per day. Each man entering and exiting her room at the Motel 6® or the Westin® as an unannounced guest.

60.    The room was frequently left with numerous used condoms scattered across various surfaces at the end of the evening. K.R. was trafficked with three (3) other girls who would share a room with her and paraphernalia indicative of commercial sex was often left in the rooms when they left. There was repeated direct contact between K.R.'s trafficker and hotel staff and K.R.'s trafficker would repeat this process multiple times a week.

COMPLAINT FOR DAMAGES

61.  While at the Westin® and Motel 6® K.R. was watched and monitored by one of her traffickers to ensure she did not leave. Someone was with K.R. at all times of the day.

62.  At the Motel 6® Oakland Airport, an employee came up the K.R.'s room and kicked them out on the basis that their backpage.com advertisements were reported. However, K.R.'s trafficker was able to bring her back to the same hotel shortly after.

63.  On one occasion, K.R.'s head was injured so badly that it was noticeable to the public.

64.  Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug consumption, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

65.  Had the Defendants been paying attention to the activities being conducted at their hotels and on their hotels, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of K.R.

### E.  THE DEFENDANTS FACILITATED THE TRAFFICKING OF K.R.

66.  G6 Hospitality and Marriott profited from the sex trafficking of K.R. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to K.R.'s traffickers, when they knew, or should have known, that they were using the room to harbor K.R., physically assault her, and subject her to repeated exploitation as she was forced into sexual servitude.

67.  G6 Hospitality and Marriott knew, or should have known, that K.R. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because K.R.'s traffickers frequented the Defendants' hotels.

68.  G6 Hospitality and Marriott knew, or should have known, that K.R. was being trafficked because K.R. constantly entertained traffic to appease her traffickers' daily quotas, her traffickers would help check her in then not proceed to the room, and she often displayed visible injury while seemingly

never allowed to be alone. All behavior that indicated they were using the Defendants' hotels for a sex trafficking venture.

69.   Defendants G6 Hospitality and Marriott actively participated in this illegal endeavor by knowingly or negligently providing lodging to K.R.'s traffickers in which to harbor K.R. while they trafficking her.

70.   Defendants G6 Hospitality and Marriott International profited from the sex trafficking of K.R. and knowingly or negligently aided and participated with K.R.'s traffickers in their criminal venture. The Defendants took no action as K.R. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising all over her person while in the constant presence of her trafficker.

71.   Defendants G6 Hospitality and Marriott actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from K.R. in which to harbor K.R. while she was being trafficked.

72.   The Defendants all had the opportunity to stop K.R.'s traffickers and offenders like them from victimizing K.R. and others like her.  Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

73.   The Defendants all financially benefited from the sex trafficking of K.R., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers (including buyers.)

74.   G6 Hospitality and Marriott enjoy the steady stream of income that sex traffickers bring to their budget level hotels, such as Motel 6® and Westin®.

75.   G6 Hospitality and Marriott financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

76.   The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent

sexual exploitation on their hotels.

77.   The Defendants maintained their deficiencies to maximize profits by:

    a.   Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    b.   Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers; and/or

    c.   Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

78.   As a direct and proximate result of these egregious practices on the part of the Defendants, K.R. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A.  COUNT ONE – 18 U.S.C § 1595 ("TVPRA")

79.   The Plaintiff K.R. incorporates each foregoing allegation.

80.   K.R. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

81.   The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. § 1591 (a).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of K.R. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

82.   The Defendants have financially benefited as a result of these acts, omissions, and/or

commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of K.R. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of K.R.'s injuries and damages.

83.   K.R. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. § 1591 (a).

### B.  COUNT TWO - CAL. CIV. CODE §52.5

84.   The Plaintiff J.C. incorporates each foregoing allegation.

85.   J.C. is a victim of sex trafficking within the meaning of California Penal Code §236.1 and is therefore entitled to bring a civil action under Cal. Civ. Code §52.5.

86.   The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of Cal. Civ. Code §52.5. At all relevant times, the Defendants breached their duties by participating in, and facilitating, the harboring and providing of J.C. for the purposes of commercial sex induced by malice, oppression, force, fraud, duress, and/or coercion, by their acts, omissions, and commissions.

87.   The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of J.C. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of J.C.'s injuries and damages.

88. J.C. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of Cal. Civ. Code §52.5.

89. J.C. is also entitled to punitive damages under Cal. Civ. Code §52.5.

## PRAYER FOR RELIEF

WHEREFORE based on the forgoing the Plaintiff seeks injunctive relief in the form of a judgement requiring the Defendants to institute sufficient audits, policies, rules, and requirements of their employees, agents, franchisees, contractors, and/or all others operating under their flag, logo, trademark, or advertising  umbrella to insure that the actions and activities outlined above no longer occur and may not serve in the future to jeopardize the health and safety of individuals similarly situated  to the Plaintiff herein.

AND WHEREFORE on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendant, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendant's wrongs and injuries to the Plaintiff due to the Defendant's faulty conduct, including but not limited to:

    a.  All available compensatory damages for the described losses with respect to each cause of action;

    b.  past and future medical expenses, as well as the costs associated with past and future life care;

    c.  past and future lost wages and loss of earning capacity;

    d.  past and future emotional distress;

    e.  consequential and/or special damages;

    f.  all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.  punitive damages with respect to each cause of action;

    h.  reasonable and recoverable attorneys' fees;

    i.  costs of this action; and

j.   pre-judgment and all other interest recoverable

Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated:  December 9, 2019

RESPECTFULLY SUBMITTED,
PLAINTIFF, by Her Attorneys,

/s/ *Melinda Davis Nokes*
Melinda Davis Nokes (SBN 167787)
mnokes@weitzlux.com

WEITZ & LUXENBERG, P.C.
*Attorneys for Plaintiff*
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (949) 338-4303
Facsimile: (310) 786-9927

*and*

Jennie Lee Anderson (SBN 203586)
Lori E. Andrus (SBN 205816)

ANDRUS ANDERSON LLP
*Attorneys for Plaintiff*
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com
lori@andrusanderson.com

COMPLAINT FOR DAMAGES