MICHAEL P. O'DAY (*pro hac vice* forthcoming)
michael.oday@us.dlapiper.com
ELLEN E. DEW (*pro hac vice* forthcoming)
ellen.dew@us.dlapiper.com
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:   215.656.2431
Fax:   215.606.2046

AMANDA L. MORGAN (Bar No. 246277)
amanda.morgan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:   415.836.2500
Fax:   415.836.2501

Attorneys for Defendant
Marriott International, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| K.R., an individual,<br><br>            Plaintiff,<br><br>     vs.<br><br>G6 HOSPITALITY, LLC; and<br>MARRIOTT INTERNATIONAL, INC.,<br><br>            Defendants. | CASE NO. 3:19-CV-08252-VC<br><br>**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   May 28, 2020<br>Time:   10:00 a.m.<br>Ctrm.:   4 - 17th Floor<br>Judge:   Hon. Vince Chhabria<br><br>Action Filed:   December 19, 2019<br>Trial Date:   TBD |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on Thursday, May 28, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the above entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendant Marriott International, Inc., will and hereby does move this Court for an order dismissing Plaintiff K.R.'s Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a).

Defendant requests the Court dismiss Plaintiff's Complaint with prejudice on the ground that Plaintiff fails to state a claim upon which relief can be granted. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Court's files in this action, the oral argument of counsel at the hearing, and on such materials and evidence as may be presented to the Court.

Dated: March 5, 2020                    DLA PIPER LLP (US)


By:   */s/ Amanda L. Morgan*
      MICHAEL P. O'DAY (*pro hac vice* forthcoming)
      ELLEN E. DEW (*pro hac vice* forthcoming)
      AMANDA L. MORGAN
      Attorneys for Defendant
      Marriott International, Inc.

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ................................................................................................................5
II.    FACTUAL BACKGROUND ..............................................................................................6
III.   LEGAL STANDARD ..........................................................................................................7
IV.    ARGUMENT .......................................................................................................................8
       A.   PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM ...................8
            1.   Plaintiff Failed To Allege That Marriott International "Knew Or Should Have Known" About The Sex Trafficking Of K.R. ......................9
            2.   Plaintiff Failed To Allege That Marriott International "Knowingly" Benefited From A Sex Trafficking Venture ............................................10
            3.   Plaintiff Failed To Allege Marriott International's "Participation" In A Sex "Trafficking Venture" ....................................................................10
            4.   Plaintiff's Complaint Relies On Impermissible "Cookie-Cutter" Allegations, Transplanted From The Pleadings Of Other, Unrelated Litigants ....................................................................................................13
       B.   PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE WESTIN HOTEL ......................................................................14
       C.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "SHOTGUN" PLEADING .....................................................15
       D.   PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA CIVIL CODE SECTION 52.5 ............................................................................................16
V.     CONCLUSION ..................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.B. v. Marriott International, Inc.*,
  No. 1:19-cv-5770 (E.D. Pa. 2019) ..................................................................................6, 13

*Acedo v. DMAX, Ltd.*,
  No. CV 15-02443MMMASX, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015).......................14

*Afewerki v. Anaya Law Grp.*,
  868 F.3d 771 (9th Cir. 2017).................................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................8, 13

*Associated Creditors' Agency v. Davis*,
  13 Cal. 3d 374 (1975).............................................................................................................15

*Bartol v. Barrowclough*,
  251 F. Supp. 3d 855 (E.D. Pa. 2017) ....................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................8, 13

*Boyer v. Becerra*,
  No. 17-cv-06063-YGR, 2018 WL 2041995 (N.D. Cal. Apr. 30, 2018) ..............................8, 15

*Canosa v. Ziff*,
  No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)...................................10

*Cha v. Hooters of Am.*,
  LLC, No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30,
  2013)........................................................................................................................................15

*Florida Abolitionist v. Backpage.com LLC*,
  No. 617CV218ORL28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018) ...........................9

*Galvan v. Walt Disney Parks and Resorts U.S.*,
  No. CV-18-01721-AB (FFM), 2019 WL 8017806 (Dec. 20, 2019) .........................................13

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................................12

*H.G. v. Inter-Continental Hotels Corp., et al.*,
  No. 19-13622 (E.D. Mich. 2019) ..........................................................................................13

*In re Hotel Industry Sex Trafficking Litig.*,
  MDL No. 2928, ECF No. 235 (J.P.M.L. Feb. 5, 2020) ......................................................7, 11

*K.B. v. Int'l Hotels Corp., et al.*,
    No. 1:19-cv-1213 (D.N.H. 2019) ........................................................................................... 13

*K.R. v. Hilton Worldwide Holdings, Inc., et al.*,
    No. 3:19-cv-1992 (D. Or. 2019) ............................................................................................ 13

*Lawson v. Rubin*,
    No. 17-CV-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ................................. 9

*Lofthus v. Long Beach Veterans Hosp.*,
    214 F. Supp. 3d 908 (C.D. Cal. 2016) .................................................................................. 16

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ........................................................................................ 8, 15

*Muhammad v. Bethel-Muhammad*,
    No. CIV.A. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ...................................... 13

*N.T. v. Taco Bell Corp.*,
    411 F. Supp. 3d 1192 (D. Kan. 2019) .................................................................................. 14

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................................... 12

*Owino v. CoreCivic, Inc.*,
    No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ......................... 16

*Patterson v. Domino's Pizza, LLC*,
    60 Cal. 4th 474 (2014) .......................................................................................................... 14

*People v. Halim*,
    14 Cal. App. 5th 632 (2017) ................................................................................................. 16

*Ratha v. Phatthana Seafood Co., Ltd.*,
    No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ................. 9, 11

*Shabazz v. Bank of Am.*,
    No. 1:10-cv-0813, 2010 WL 11647333 (N.D. Ga. Oct. 26, 2010) ........................................ 13

*Shuvalova v. Cunningham*,
    No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ........................................... 12

*Talib v. Guerrero*,
    No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) ........................... 16

*Temple v. McDonald's Corp.*,
    No. CIV.A.11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) ...................................... 15

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) .................................................................................. 11, 12

*United States v. Coppin*,
    1 F. App'x 283 (6th Cir. 2001)...................................................................................................11

*United States v. Longoria*,
    569 F.2d 422 (5th Cir. 1978)......................................................................................................11

**STATUTES**

18 U.S.C. § 1591 .................................................................................................................................8

18 U.S.C. § 1595 .................................................................................................................................5

18 U.S.C. § 1595(a)..............................................................................................................8, 9, 10, 11

California Civil Code Section 52.5 .....................................................................................5, 6, 16, 17

Penal Code § 236.1............................................................................................................................16

Penal Code § 236.1(a) .......................................................................................................................16

Penal Code § 236.1(b) .......................................................................................................................16

Penal Code § 236.1(c) .......................................................................................................................16

**OTHER AUTHORITIES**

Fed R. Civ. P. § 8(a)....................................................................................................................8, 15

Fed R. Civ. P. § 12(b)(6)..................................................................................................................7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff K.R.'s ("Plaintiff" or "K.R") complaint (the "Complaint") seeks to hold Defendant Marriott International, Inc. ("Marriott International") civilly liable for sex trafficking that allegedly occurred at a hotel operating under the Marriott brand. Plaintiff's complaint does not—and cannot—state a claim under either 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act ("TVPRA"), or California Civil Code Section 52.5, because Marriott International lacked the requisite knowledge or intent required under these statutes, respectively, and did not participate in a sex trafficking venture at any hotel where Plaintiff was allegedly trafficked.

Specifically, Plaintiff's complaint against Marriott International should be dismissed for at least three reasons. *First*, the Complaint fails to plead facts sufficient to state a TVPRA claim that Marriott International knowingly benefited from and participated in the trafficking of K.R. The thrust of the Complaint is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry. But other than alleging that Marriott International owns the Westin brand, which was licensed to the independent owner and franchisee of the Westin San Francisco Airport hotel (the "Hotel"), the Complaint lacks any factual allegations that Marriott International knew, should have known, or even plausibly could have known that K.R. was trafficked there. The Complaint lists three news reports in an attempt to allege Marriott International should have been generally aware that sex trafficking can occur at hotels, but those reports involved *crimes in other states unrelated to K.R.* As to Marriott International's knowledge of K.R., the Complaint says nothing. Importantly, there are no allegations that K.R. had any interactions with Marriott International employees which could plausibly have put Marriott International on notice of alleged crimes against her. The Complaint also lacks factual allegations that Marriott International "participated" in the trafficking.

Relatedly, Plaintiff's second claim against Marriott International, under California Civil Code Section 52.5, is even more deficient. The scope of civil liability under Section 52.5 is narrower than the TVPRA and requires pleading and proving *intent*—not merely knowledge. The Complaint does not—and cannot—plead that Marriott International had "intent to obtain forced labor or

-5-

1  services" from K.R., as required to state a Section 52.5 claim.

2  *Second*, the Complaint fails to allege adequate facts to support a claim for vicarious liability. In conclusory fashion, the Complaint alleges that Marriott International had the right to enforce uniform standards at the Hotel under a franchise agreement. As a matter of California law, however, this does not create an agency relationship sufficient to establish vicarious liability because the Complaint fails to allege facts showing that Marriott International controlled the day-to-day operations of the Hotel.

8  *Third*, the Complaint relies on impermissible group pleadings that do not satisfy the Federal Rules of Civil Procedure's notice pleading requirements. The Complaint repeatedly makes generic shotgun allegations regarding "Defendants," without specifying who did what, and even refers to hotels and franchisors who are not parties to this action. The Complaint challenges the hotel industry generally for failing to stop sex trafficking, but does not allege facts specific to actions by Marriott International. Marriott International has been an industry leader in addressing human trafficking, including developing and implementing training at hotels around the world, and condemning all forms of human trafficking and sexual exploitation. (*See* Compl. ¶¶ 37-38.) But this case is not about the hospitality industry and human trafficking in general. It is about K.R. While the allegations of the crimes committed against her by *unnamed traffickers* are appalling, these allegations do not state a claim against *Marriott International*.

19  Thus, Marriott International respectfully requests that this Court dismiss Plaintiff's claims against it with prejudice.

21  **II.    FACTUAL BACKGROUND**

22  This lawsuit is part of a nationwide wave of dozens of cases filed in late 2019 and early 2020 using a boiler-plate form complaint seeking to hold hospitality industry participants liable under the TVPRA for sex trafficking. While the plaintiffs and defendants vary in each case, the complaints are virtually identical in their conclusory allegations: they allege the hospitality industry has turned a blind eye to sex trafficking; they assert that various defendant franchisors "control" the hospitality industry and therefore "participate" in sex trafficking at hotels; they list reports of sex trafficking at different hotels throughout the country; and they conclude with brief allegations about the criminal

trafficker's acts against the plaintiff in each case.[1] Although the allegations regarding each plaintiff's victimization by her traffickers are appalling and tragic, the allegations against Marriott International are vague and conclusory.

The Complaint here follows this form. It focuses on sex trafficking generally, but includes just a few, conclusory allegations against Marriott International in relation to K.R. For example, the Complaint cites statistics, news articles, and policy reports on human sex trafficking (Compl. ¶¶ 19-42), generalities concerning franchisors' alleged "control" over the hospitality industry (Compl. ¶¶ 43-49), and reports of crimes involving different hotels in other states (Compl. ¶ 51.a.ix.). None of this relates to the alleged criminal acts carried out against K.R. by her traffickers.

When it comes to telling K.R.'s story, the Complaint tells a brief but disturbing tale of her kidnapping and victimization by unnamed criminal sex traffickers. Without being detected by law enforcement, these traffickers forced K.R. to engage in commercial sex acts against her will in various hotels, including allegedly the Westin San Francisco Airport Hotel, between 2006-2016. (Compl. ¶¶ 4, 6, 53-65.) The traffickers concealed their crimes through physical and psychological violence and K.R. had virtually no contact with hotel staff. (Compl. ¶¶ 53-65.)

The Complaint then asserts the bare legal conclusion that Marriott International knew or should have known about the criminal acts by the traffickers, but asserts no facts to support that conclusion. (Compl. ¶¶ 66-77.) And without stating any facts to suggest how Marriott International could have known about these crimes, the Complaint asserts the conclusion that it failed to take "reasonable measures" that somehow would have revealed the criminal activity and prevented the traffickers' crimes. (Compl. ¶ 72.) Nowhere does the Complaint allege facts suggesting that Marriott International was aware of the criminal incidents or participated in the sex trafficking of K.R.

## III.   LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief

---

[1] The attempt to hold the hospitality industry parties liable generally through consolidated proceedings has been denied. *In re Hotel Industry Sex Trafficking Litig.*, MDL No. 2928, ECF No. 235 (J.P.M.L. Feb. 5, 2020).

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although factual allegations are accepted as true, "labels and conclusions" are given no deference. *Twombly*, 550 U.S. at 545 (internal citations omitted). "Shotgun" complaints with vague group allegations, moreover, cannot withstand challenges under Rule 12(b)(6) or Rule 8(a) because such allegations deprive a defendant of fair notice of what it is alleged to have done. *See*, *e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *accord. Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 WL 2041995, at *7 (N.D. Cal. Apr. 30, 2018).

## IV.   ARGUMENT

### A.   PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM

In enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion. 18 U.S.C. § 1591. Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in and benefit from sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a) (emphasis added). The Complaint does not allege that Marriott International was a "perpetrator" of the trafficking of K.R. Rather, it alleges in a conclusory manner that Marriott International knowingly benefited from and participated in a venture by unnamed sex traffickers. The Complaint is fatally defective, however, because it does not (and cannot in good faith) allege any facts suggesting that Marriott International plausibly knew or should have known about K.R.'s tormentors or knowingly benefited from their crimes, let alone "participated" in those crimes.

1.       **Plaintiff Failed To Allege That Marriott International "Knew Or Should Have Known" About The Sex Trafficking Of K.R.**

The crux of the Complaint is that Marriott International "knew or should have known" (*id.*) that K.R. was being victimized by criminal sex traffickers because "the hospitality industry" is complicit in sex trafficking. (Compl. ¶¶ 19-51.) These allegations are copied from other complaints filed throughout the country against many different franchisors, and have very little to do with Marriott International or K.R. For example: allegations (as well as sources cited in the footnotes) refer to other hotel companies who are not even parties to this case. (*See*, *e.g.*, Compl. ¶¶ 35 (Wyndham Hotels); 40 (IHG).) As a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of K.R.'s sex trafficking. *See Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5-6 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports about human trafficking in Thailand … [but] Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory."); *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018).

The Complaint attempts to establish notice of K.R.'s trafficking based on three reports about hotels that had nothing to do with K.R. (Compl. ¶ 51.a.ix.) These reports could not have put Marriott International on notice of K.R.'s victimization and are irrelevant, because they related to incidents that occurred at hotels in Washington, Texas and Massachusetts, involved different crimes (prostitution and assault), and different victims. Indeed, one of the three reports covered an incident that occurred *after* K.R. escaped from her captors. Even if the Complaint had alleged an arrest at the Hotel, this would not be enough; *a fortiori* allegations of crimes occurring elsewhere (and after K.R.'s injury) are immaterial. *See Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018) ("[P]laintiffs have not cited any caselaw to support their argument that one visit by the police department and one ambulance sent to the residence over six years is sufficient to put the owner of the premises on notice of illegal activity.").

The brief allegations about K.R. likewise lack any content related to Marriott International. To the extent the allegations say anything about hotels, they either refer to hotels not associated with the Marriott brand (Compl. ¶ 62) or vaguely lump Marriott International together with such hotels (Compl. ¶¶ 55, 58-59, 61). There is no suggestion that K.R. had contact with the hotel staff, much less any employees of Marriott International. Simply put, the Complaint alleges no facts to suggest that Marriott International knew or should have known that K.R. was being trafficked at the Hotel.[2]

### 2. Plaintiff Failed To Allege That Marriott International "Knowingly" Benefited From A Sex Trafficking Venture

For the same reasons, the TVPRA claim must be dismissed because the Complaint does not allege that Marriott International "knowingly" benefited from a sex trafficking venture. 18 U.S.C. § 1595(a). Apart from reciting conclusory labels, the Complaint alleges that Marriott International "directly benefitted from the trafficking of K.R. on each occasion it received payment for rooms that she was being kept in [its] hotels." (Compl. ¶¶ 82, 87.) But there are no facts from which Marriott International had any reason to suspect that the rooms were used to commit sex trafficking crimes as alleged by the Complaint. *See* Section IV.A.1, *supra*. As a franchisor, Marriott International receives a royalty from the overall revenues from the business of the franchised hotel. Collection of rent from guests in the ordinary course of business cannot support a reasonable inference that a franchisor "knowingly" benefited from crimes committed in those rooms. *See*, *e.g.*, *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (internal citations omitted) (noting that a defendant cannot be held liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

### 3. Plaintiff Failed To Allege Marriott International's "Participation" In A Sex "Trafficking Venture"

The Complaint also falls short of alleging any facts to support the conclusion that Marriott

---

[2] The Complaint alleges that Plaintiff was "forced by her trafficker to walk the track between 72nd and 74th streets [in Oakland] and sexually service the buyers that hailed her at the Westin San Francisco Airport …and at the Motel 6 Oakland Airport." (Compl. ¶ 55.) The distance between 72nd Avenue in Oakland and the Westin Hotel is over 30 miles *across* San Francisco Bay, which raises questions as to whether the Complaint has misidentified the Hotel.

International (1) "participated" in (2) a "sex trafficking venture." 18 U.S.C. §1595(a). The United States Court of Appeals for the Sixth Circuit recently held that liability under the TVPRA requires (1) an *overt act* of participation in (2) a *sex trafficking* venture (not merely *any* "venture"). *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016). The Complaint fails to allege facts supporting either (let alone both) of these elements.

First, a lawful relationship unrelated to sex trafficking (*e.g.*, a franchisor-franchisee relationship) is not a "venture" within the meaning of the statute. Rather, the party must have participated in a *sex trafficking* venture. *Id.* at 286. In *Afyare*, the prosecution argued that, under the TVPRA, "a 'venture' is *any* two or more people associating *for any reason*, even legal or innocuous reasons and, importantly, even reasons wholly unrelated to sex trafficking." *Id.* at 279 (emphasis in original). The Sixth Circuit rejected that reading of the statute, finding instead that the term "venture," as used in the TVPRA, means a "sex-trafficking venture," and exists only where "[t]wo or more people [] engage in sex trafficking together." *Id.* at 286. People who associate for purposes other than trafficking, even if some subset of those people may separately commit sex trafficking crimes, cannot constitute a "venture" within the meaning of the statute. *Id.* at 286; *cf. United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy") (citations omitted).

Second, "participation" in a sex trafficking venture requires an overt act; nonfeasance or a failure to prevent a crime is insufficient. *See Afyare*, 632 F. App'x at 286 ("mere negative acquiescence" is not enough); *Ratha, Ltd.*, 2017 WL 8293174, at *4; *cf. United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that defendant committed an overt act designed to aid in the success of the venture."). Construing the TVPRA otherwise "would create 'a vehicle to ensnare conduct that the statute never contemplated.'" *Afyare*, 632 F. App'x at 286.

Courts have confirmed that these same principles apply to civil liability under the TVPRA:

> Because guilt, or in this case liability, cannot be established by association alone, *Plaintiff must allege specific conduct that furthered the sex trafficking venture*. Such conduct must have been undertaken with the knowledge, or in reckless disregard of

>the fact, that it was furthering the alleged sex trafficking venture. *In other words, some participation in the sex trafficking act itself must be shown.*

*Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (citing *Afyare*, 632 F. App'x at 285 (emphasis added)); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities ….") (internal citation omitted, emphasis in original)).

These principles are in accord with how this Court has applied the TVPRA. In *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010), plaintiffs filed TVPRA claims, alleging that a man named Joe and his son, Dan, forced them into involuntary servitude. *Id.* at *1-3. Even though the plaintiffs adequately stated a claim against Joe, this Court dismissed the claim against Dan, finding that the allegations that Joe had Dan's "help" in trafficking the plaintiffs because Dan was a "very large man" and his "physical presence" in the room served as a conspicuous reminder to the victims "that they could not escape," was *not* enough to state a claim. *Id.* at *3. It was not an overt act.

Here, the Complaint altogether fails to allege that Marriott International "participated" in any "sex trafficking venture." First, there is no allegation that Marriott International had any association with a "sex trafficking venture." The only "venture" that Marriott International is alleged to have is a lawful relationship with the Hotel. Yet the only "venture" relevant for purposes of the TVPRA is the "sex trafficking venture" committed by unnamed criminals—with whom the Complaint does not suggest that Marriott International had *any* association. Second, and more fundamentally, there is no allegation that Marriott International committed any overt act in furtherance of that sex trafficking venture. Alleged nonfeasance is insufficient. *Afyare*, 632 F. App'x at 286. Indeed, if Marriott International did not even know and could not have known about the sex trafficking venture (*see* Section IV.A.1, *supra*), *a fortiori* it did not and could not have "participated" in that venture. The Complaint asserts merely the legal conclusion that "Defendants … actively participated in this illegal endeavor [of trafficking K.R.]." (Compl. ¶¶ 69, 71.) Yet it fails to assert any factual allegations to support that conclusion.

4. Plaintiff's Complaint Relies On Impermissible "Cookie-Cutter" Allegations, Transplanted From The Pleadings Of Other, Unrelated Litigants

The implausibility of this Complaint is underscored by the fact that the Plaintiff has merely pasted "cookie-cutter" or boiler-plate allegations from the pleadings of other, unrelated TVPRA litigants, filed in different states around the same date, as part of a failed effort to consolidate claims against the hotel industry generally. *See*, *e.g.*, *A.B. v. Marriott International, Inc.*, No. 1:19-cv-5770 (E.D. Pa. 2019); *H.G. v. Inter-Continental Hotels Corp., et al.*, No. 19-13622 (E.D. Mich. 2019); *K.R. v. Hilton Worldwide Holdings, Inc., et al.*, No. 3:19-cv-1992 (D. Or. 2019); *K.B. v. Int'l Hotels Corp., et al.*, No. 1:19-cv-1213 (D.N.H. 2019). Even though each case involved different plaintiffs, different sex traffickers, and different hotel owners and operators, plaintiffs' counsel in each case pled the same boiler-plate and conclusory allegations against Marriott International.

Following *Twombly* and *Iqbal*, federal courts throughout the country have condemned the practice of using such "form complaints" as a badge of inadequate pleading:

> Plaintiff's complaint is a form complaint that "makes generalized allegations regarding practices of the mortgage lending industry" and is "devoid of particularized factual allegations against Defendant." … *[O]ther courts both within and outside of this district have had almost identical complaints on their dockets. … Plaintiff has apparently simply copied and pasted the form complaint to create her own complaint*, and her complaint contains no allegations specific to her mortgage transaction.

*Shabazz v. Bank of Am.*, No. 1:10-cv-0813, 2010 WL 11647333, at *2 and n.1 (N.D. Ga. Oct. 26, 2010) (internal citations omitted, emphasis added); *Galvan v. Walt Disney Parks and Resorts U.S.*, No. CV-18-01721-AB (FFM), 2019 WL 8017806, at *2 (Dec. 20, 2019) (dismissing complaint which contained allegations copied and pasted from a previously filed complaint in another action); *cf. Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) ("The plaintiff's sweeping reference to his 100–page complaint represents precisely the boiler plate safety valve … that other courts—and this one—condemn.") (internal quotations and citations omitted).

This case represents a paradigmatic example of improper "form" pleading. As in each other TVPRA case above, the Complaint here alleges the legal conclusions that Marriott International

knew or should have known about criminal conspiracies committed against different victims and failed to take reasonable measures to discover and prevent those crimes. While the use of form complaints (as here) is always a clear sign of inadequate pleading, it is particularly inappropriate in the context of TVPRA claims, which cabin civil liability upon specific proof of criminal acts by those who actively and knowingly participate in sex trafficking ventures. *See* Section IV.A.1-3, *supra*.

### B. PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE WESTIN HOTEL

The Complaint alleges a franchisor-franchisee relationship at the Hotel. (Compl. ¶¶ 10, 43-49, 51.a.vi.) To the extent that the Complaint assumes that this relationship renders Marriott International vicariously liable for K.R.'s trafficking based on Marriott International's "apparent and/or actual agency relationship with" the Hotel (Compl. ¶ 51.a.vi), that assumption is wrong as a matter of California law.

The Supreme Court of California has made clear that a franchisor is vicariously liable for the actions of its franchisee "only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, *and relevant day-to-day aspects of the workplace behavior of the franchisee's employees*." *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 497-98 (2014) (emphasis added). In *Patterson*, the plaintiff filed sexual harassment-related claims, including assault and battery, against Domino's Pizza and its franchisee. *Id.* at 479-80. Following a thorough discussion of agency principles in the franchisor-franchisee context, the Court held that Domino's Pizza was not vicariously liable as a matter of law. *Id.* at 503. The Court held that "standards, procedures, and requirements that regulate each" franchisee was not enough; rather, a showing of day-to-day control was required; indeed "*[a]ny other guiding principle would disrupt the franchise relationship*." *Id.* at 497-98 (emphasis added, internal citations omitted).

Federal courts, applying substantially similar legal principles, have found complaints alleging a franchisor-franchisee relationship deficient. *See*, *e.g.*, *N.T. v. Taco Bell Corp.,* 411 F. Supp. 3d 1192 (D. Kan. 2019) (dismissing vicarious liability claim against franchisor under Kansas law); *Acedo v. DMAX, Ltd.*, No. CV 15-02443MMMASX, 2015 WL 12696176, at *29 (C.D. Cal.

-14-

Nov. 13, 2015) (Michigan law); *Cha v. Hooters of Am.*, LLC, No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) (New York law); *Temple v. McDonald's Corp.*, No. CIV.A.11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) (Maryland law).

These principles compel the same result under California law. The Complaint alleges that Marriott International "may exercise or could have exercised control" over the Hotel. (Compl. ¶ 51.a.v.) But it does not allege facts showing that Marriott International had the right to control relevant day-to-day operations covering the relevant time period when K.R. was trafficked. The Complaint states that "[p]er the contract or franchise agreement," Marriott International "may enforce [its] standards through periodic inspections and *even terminate the contract or franchise agreement if the local hotel is found to be inadequate*." (Compl. ¶¶ 43-49 (emphasis added).) But this is insufficient to establish vicarious liability under California law.[3]

### C. PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "SHOTGUN" PLEADING

The TVPRA claim also should be dismissed because it fails to attribute specific factual allegations to Marriott International and does not comply with Rule 8(a). Complaints are deficient when they are "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among … defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). This "shotgun" approach to pleading deprives Marriott International with sufficient notice of what it is alleged to have done. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (internal citations omitted); accord. *Boyer v. Becerra*, No. 17-CV-06063-YGR, 2018 WL 2041995, at *7 (N.D. Cal. Apr. 30, 2018) (dismissing complaint because "plaintiff continues to use improper group pleading. Plaintiff repeatedly lumps 'defendants' together

---

[3] The Complaint also fails to state any claim based on vicarious liability under an ostensible agency theory, for which a plaintiff must establish (1) reasonable belief in the ostensible agent's authority, (2) generated by the principal's act or neglect, and (3) reasonable reliance on the agent's apparent authority. *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975) (internal citations omitted). Among other things, the factual core of the whole Complaint—that criminals trafficked K.R. in various hotels *against her will*—is incompatible with the notion that K.R. somehow "relied" (let alone reasonably relied) on the Hotel's apparent authority.

in her allegations.") Likewise, the Complaint here repeatedly lumps Marriott International together with co-Defendant, G6 Hospitality, LLC.

### D. PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA CIVIL CODE SECTION 52.5

Plaintiff's claim under California Civil Code Section 52.5 is even more defective. The complaint does not, and cannot, allege the required statutory elements because this claim requires pleading "*intent* to obtain forced labor or services." *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016) (emphasis added). Section 52.5(a) provides in pertinent part: "A victim of human trafficking, *as defined in Section 236.1 of the Penal Code*, may bring a civil action for actual damages …" (emphasis added). Section 236.1 of the Penal Code, in turn, provides in pertinent part: "(a) A person who deprives or violates the personal liberty of another *with the intent* to obtain forced labor or services, is guilty of human trafficking …" (Emphasis added).[4]

The statute's meaning is plain, and must be enforced. *See Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 778 (9th Cir. 2017) ("When the statutory 'language is unambiguous, the plain meaning controls.'") (internal citation omitted). The elements of a Penal Code Section 236.1(a) violation are that: "(1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person." *People v. Halim*, 14 Cal. App. 5th 632, 643 (2017) (internal citations omitted). Because Civil Code Section 52.5 incorporates Penal Code Section 236.1, civil claims under Section 52.5 must allege both these elements. *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *15 (S.D. Cal. May 14, 2018) (applying the *Halim* elements to a Section 52.5 claim); *see also Lofthus*, 214 F. Supp. 3d at 916 (dismissing Section 52.5 claim because "[p]laintiff fails to allege any intent to obtain forced labor or services"); *Talib v. Guerrero*, No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) (recommending dismissal with prejudice of Section 52.5 claim where plaintiffs "did not allege that Defendants acted

---

[4] Plaintiff does not allege that Marriott International committed or intended to commit any violation of the Penal Code provisions referenced in subsection (b) or (c).

with the intent to obtain forced labor or services").

The Complaint fails to allege *either* element here. Instead, its Section 52.5 allegations merely parrot the conclusory TVPRA allegations that Defendants "facilitate[d]" her trafficking and financially benefited as a result. (*See* Compl. ¶ 86.) This is insufficient; if the factual allegations fall short of suggesting that Marriott International even *knew* about the crimes committed against K.R. (*see* Section IV.A.1, *supra*), *a fortiori* they do not state a claim that Marriott International *intended* to obtain forced labor or services or benefit from those crimes.[5]

## V.  CONCLUSION

For the foregoing reasons, Marriott International respectfully requests that this Court dismiss the Plaintiff's claims against Marriott International with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: March 5, 2020                            DLA PIPER LLP (US)


By:  */s/  Amanda L. Morgan*
MICHAEL P. O'DAY (*pro hac vice* forthcoming)
ELLEN E. DEW (*pro hac vice* forthcoming)
AMANDA L. MORGAN
Attorneys for Defendant
Marriott International, Inc.

---

[5] The plain language of Section 52.5 makes clear that its scope of civil liability is narrower than that of the TVPRA. But even assuming (*arguendo*) that this Court construes Section 52.5 and the TVPRA *in pari materia*, the Section 52.5 claim should be dismissed for the same reasons that the Complaint's TVPRA claim is deficient. *See* Section IV.A, *supra*.