1  MICHAEL P. O'DAY (*pro hac vice* pending)
   michael.oday@us.dlapiper.com
2  ELLEN E. DEW (*pro hac vice* pending)
   ellen.dew@us.dlapiper.com
3  **DLA PIPER LLP (US)**
   The Marbury Building
4  6225 Smith Avenue
   Baltimore, Maryland 21209
5  Tel:    215.656.2431
   Fax:    215.606.2046
6
7
   AMANDA L. MORGAN (Bar No. 246277)
8  amanda.morgan@us.dlapiper.com
   **DLA PIPER LLP (US)**
9  555 Mission Street, Suite 2400
   San Francisco, California 94105-2933
10 Tel:    415.836.2500
   Fax:    415.836.2501
11
12 Attorneys for Defendant
   Marriott International, Inc.
13

14                 **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16                        **SAN FRANCISCO**

17 | K.R., an individual,                  | CASE NO. 3:19-CV-08252-VC
18 |                      Plaintiff,        | **DEFENDANT MARRIOTT
                                            | INTERNATIONAL, INC.'S REPLY
19 |        vs.                             | MEMORANDUM OF POINTS AND
                                            | AUTHORITIES IN SUPPORT OF MOTION
20 | G6 HOSPITALITY, LLC; and               | TO DISMISS PLAINTIFF'S FIRST
   | MARRIOTT INTERNATIONAL, INC.,          | AMENDED COMPLAINT**
21 |
22 |                      Defendants.       | Date:      June 3, 2020
                                            | Time:      2:00 p.m.
23 |                                        | Ctrm.:     2 - 17th Floor
                                            | Judge:     Hon. Vince Chhabria
24 |
25 |                                        | Action Filed:    December 19, 2019
                                            | FAC Filed:       March 19, 2020
26 |                                        | Trial Date:      TBD

27

28

-1-
REPLY MPA IN SUPPORT OF MOT. TO DISMISS PLTF'S FIRST AMEND. COMPL.
CASE NO. 3:19-CV-08252-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .......................................................................................................2

       A.     The Amended Complaint Does Not Plead A Plausible TVPRA Claim.................2

           1.     Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code. ........................................................................................................2

           2.     Marriott International Neither Knew Nor Should Have Known That K.R.'s Traffickers Were Engaged In A Chapter 77 Violation. ..................7

           3.     Marriott International Did Not Knowingly Benefit From The Venture. .......................................................................................................7

       B.     The Amended Complaint Does Not Plead An Agency Relationship....................8

       C.     The Amended Complaint Fails to Plead A Cal. Civ. Code § 52.5 Claim. .............9

III.    CONCLUSION .................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Marriott International, Inc.*,
   No. 19-5770 (E.D. Pa. April 22, 2020) .................................................................................1, 6

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019)...................................................................................................5

*Gilbert v. U.S. Olympic Comm.*,
   423 F. Supp. 3d 1112 (D. Colo. 2019) ......................................................................................5

*H.H. v. G6 Hospitality, LLC*,
   No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ...............................................6

*Jane Doe 1 v. Red Roof Inns, Inc.*,
   No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020) ................................5

*Jane Doe 2 v. Red Roof Inns, Inc.*,
   No. 1:19-cv-3841, 2020 WL 1872337, slip op. (N.D. Ga. Apr. 13, 2020) .............................5, 8

*Jane Doe 3 v. Red Roof Inns, Inc.*,
   No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020) ................................5

*Jane Doe 4 v. Red Roof Inns, Inc.*,
   No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020) ................................5

*Kuchta v. Allied Builders Corp.*,
   21 Cal. App. 3d 541 (1971)........................................................................................................8

*Lofthus v. Long Beach Veterans Hosp.*,
   214 F. Supp. 3d 908 (C.D. Cal. 2016)........................................................................................9

*N.T. v. Taco Bell Corp.*,
   411 F. Supp. 3d 1192 (D. Kan. 2019) .....................................................................................8, 9

*Owino v. CoreCivic, Inc.*,
   No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) .............................9

*Ratha v. Phatthana Seafood Co., Ltd.*,
   No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)............................................4, 7

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ......................................................................................................5

*Shuvalova v. Cunningham*,
   No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ...............................................4

*Talib v. Guerrero*,
    No. CV 15-03825-JAK (DFM), 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) ........................9

*Talib v. Guerrero*,
    No. CV 15-3825-JAK (DFM), 2015 WL 7428511 (C.D. Cal. Nov. 20, 2015) ....................9, 10

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016)................................................................................................5

*Williams v. Taylor*,
    529 U.S. 362 (2000) ...................................................................................................................1

**Statutes**

18 U.S.C. §§ 1581 et seq. ...............................................................................................................3

18 U.S.C. § 1589 .............................................................................................................................4

18 U.S.C. § 1595 ..........................................................................................................................2, 4

18 U.S.C. § 1595(a)..............................................................................................................1, 3, 4, 8

Cal. Civil Code § 52.5 ...............................................................................................................2, 9, 10

**Other Authorities**

Bill Analysis of Assembly Bill 22, 2005 Assembly Committee on Judiciary,
    Regular Session (Cal. Apr. 28, 2005), *Available at* www.leginfo.ca.gov/pub/05-
    06/bill/asm/ab_0001-0050/ab_22_cfa_20050428_095213_asm_comm.html ..........................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3          Plaintiff's opposition to Marriott's Motion to Dismiss the First Amended Complaint (ECF

4    No. 39, hereinafter "Opposition" or "Opp.") advances a construction of the TVPRA that turns that

5    statute on its head. Instead of applying the actual words of the statute, which applies civil liability

6    to those who *participate* in illegal activity by third party criminals, the Opposition's reading of

7    18 U.S.C. § 1595(a) would create liability for businesses who *fail to affirmatively prevent* such

8    illegal activity. Contrary to the Opposition's straw man argument, Marriott International does not

9    contend that this Court is required to import the definition of "participation in a venture" or other

10   specific phrases from criminal sections of the TVPRA, the Federal Civil RICO statute, or other

11   authorities. Opp. at 3, 5-8. What *is* required is the application to Section 1595(a) of the well-

12   settled rule of construction (cited in the Opposition itself) that "courts must give effect to every

13   clause and word of a statute." Opp. at 7 (citing *Williams v. Taylor*, 529 U.S. 362, 364 (2000)).

14   Among other fatal deficiencies, the Opposition's construction of Section 1595(a) runs afoul of that

15   maxim by reading the key words such as "participate in" right out of the statute.

16         The cases construing the TVPRA by the U.S. District Courts for the Southern District of

17   Ohio and Eastern District of Pennsylvania do not support the Opposition's argument. Indeed, the

18   latter expressly disavowed the theory that "Congress imposed duties upon businesses to

19   affirmatively prevent sex trafficking on their hotel properties" or that "hotels (and other

20   businesses or professions possibly earning money from trafficking)" are required "to

21   affirmatively stop [sex] trafficking." *A.B. v. Marriott International, Inc*., No. 19-5770 (E.D. Pa.

22   April 22, 2020), ECF No. 39-2 (hereinafter, "*A.B.*") at 11. Yet this is precisely the theory of

23   liability Plaintiff relies upon throughout the First Amended Complaint (ECF No. 24, hereinafter,

24   the "Amended Complaint" or "FAC"). Even assuming (*arguendo*) that this Court were to adopt

25   those courts' broader beneficiary theory of liability (which it should *not*), Plaintiffs' TVPRA claim

26   is still deficient because it fails to make factual allegations that Marriott International knew or

27   should have known of (let alone knowingly benefitted from) K.R.'s plight.

28         The Opposition invokes incendiary rhetoric, calling Marriott International's argument

1  "callous[]" and claiming that "Marriott knew exactly what was going on in K.R.'s hotel rooms."

2  Opp. at 2, 5. This is disingenuous; no facts alleged in the Amended Complaint (or any inferences

3  drawn therefrom) remotely justify the inflammatory claim that Marriott "knew exactly what was

4  going on in K.R.'s hotel rooms." Marriott International unequivocally condemns all forms of

5  forced labor and sexual exploitation and has been an industry leader in addressing these grave

6  concerns. FAC ¶ 63. The simple fact, though, is that hotel franchisors are not civilly liable for

7  being unable to uncover and stop every crime that occurs on their franchisees' hotel premises.

8      The rest of the Opposition fares no better. It avers that the Court should wait until after

9  discovery to decide whether an agency relationship exists between Marriott International and the

10 Westin, but glides over (1) the absence of *factual* allegations suggesting day-to-day control and (2)

11 the Federal cases which have dismissed similarly deficient pleadings before discovery. Opp. at 10-

12 13 and n.14. And it misconstrues Cal. Civil Code Section 52.5 authority unfavorable to its position

13 as mere "dicta." Opp. at 13-14. Even assuming (*arguendo*) that that statute should be construed as

14 synonymous with the TVPRA, the state law claim suffers from the same fatal flaws as does the

15 TVPRA claim. The Court should dismiss the Amended Complaint in its entirety with prejudice.

16 **II.     ARGUMENT**

17     **A.     The Amended Complaint Does Not Plead A Plausible TVPRA Claim.**

18         **1.     Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code.**

19

20     The crux of the Opposition is that "[t]he 2008 amendment [to the TVPRA] evinced a broad

21 Congressional intent to impose liability on businesses, such as Marriott, that facilitate and

22 financially benefit from sex trafficking." Opp. at 3. In other words, "recognition of the prevalence

23 of sex trafficking in its brand hotels," coupled with a failure to affirmatively prevent such

24 trafficking, is enough. Opp. at 4. *See also* FAC ¶ 60 ("In 2008, 18 U.S.C. § 1595 effectively

25 required all companies with a peculiar proximity to human trafficking for commercial sex,

26 including Marriott and G6 Hospitality, to use reasonable measures and conduct proactive audits to

27 ensure that they were not profiting from what they should know are human trafficking ventures.").

28 This reading of the TVPRA is untenable. There is no indication from the text of the TVPRA's

1  2008 amendment or its legislative history that Congress intended to deputize the hotel industry

2  with law enforcement authority or impose an affirmative duty on the industry to "conduct

3  proactive audits" to actively investigate and police sex trafficking.

4  First and foremost, Plaintiff's construction is incompatible with the plain text of the statute.

5  Section 1595(a) imposes civil liability on (inter alia) "whoever *knowingly* benefits, financially or

6  by receiving anything of value from *participation* in a *venture which* that person knew or should

7  have known *has engaged in an act in violation of this chapter*)." (emphases added). The "chapter"

8  referred to is Chapter 77 of Title 18 of the United States Code, *i.e.*, 18 U.S.C. §§ 1581 et seq.,

9  which criminalizes peonage, slavery, forced labor, sex trafficking, and similar acts. Thus, civil

10  liability under Section 1595(a) is predicated upon *knowingly* (1) benefitting from and (2)

11  participating in (3) a *venture which* the defendant knew or should have known *was engaged in a*

12  forced labor or sex trafficking violation.

13  The Opposition cites the rule that "courts must give effect to every clause and word of a

14  statute" (Opp. at 7, internal citation omitted), yet violates that rule in two ways with respect to

15  Section 1595(a). *First*, it avers that "Marriott feebly argues that a franchisor-franchisee

16  relationship is not a venture within the meaning of the statute, but cites no on-point authority"

17  (Opp. at 8). This ignores the fact that Section 1595(a), by its terms, applies not to a "venture" in a

18  vacuum, but rather to one "*engaged in an act in violation of* [Chapter 77]." 18 U.S.C. § 1595(a)

19  (emphasis added). The Opposition disregards the emphasized words from the statute by suggesting

20  that participation in *any* venture, such as a franchisor-franchisee relationship, suffices for liability.

21  As explained in Marriott International's Motion to Dismiss, the Federal Civil RICO's definition of

22  venture—an association in fact of persons for a common purpose—is persuasive given the

23  similarities in language between the two statutes. It is telling that the Opposition has no response

24  to this argument other than to call these cases "wholly unrelated to the TVPRA claims at issue

25  here." Opp. at 8. Yet this Court need not even apply RICO cases to reach the correct result, as the

26  plain text of the statute makes clear that liability turns on participation in not just any "venture,"

27  but one specifically "engaged in an act in violation of" Chapter 77. For similar reasons, the

28  Opposition's argument that Marriott International "merges" civil and criminal TVPRA sections by

-3-

1 seeking to "transform section 1595(a)'s requirement of 'participation in a venture' into

2 'participation in a *sex trafficking* venture,'" misses the point. (Opp. at 3, 6, emphasis in original.)

3 To define "venture" for purposes of the TVPRA, the Court need only give effect to every word of

4 Section 1595(a)—which imposes liability for participation in a venture *engaged in a Chapter 77*

5 *violation*. In short, there is not a single factual allegation in the Amended Complaint suggesting

6 that Marriott International participated in any venture with K.R.'s traffickers.

7      *Second*, the Opposition likewise deletes the words "participate in" from the statute.

8 Throughout the Opposition and Amended Complaint, Plaintiff asserts that "participation" includes

9 "failing to act," "failing to train the hotel's staff how to respond when someone is being

10 trafficked," "failing to take proper security measures to combat sex trafficking," and so on. Opp. at

11 1, 4, 9; *see also* FAC ¶¶ 42-47. A central premise of Plaintiff's TVPRA claim is summed up in

12 Paragraph 59 of the Amended Complaint: "Hospitality companies, including Marriott and G6

13 Hospitality, can and should mandate that *all* staff working at *all* hotel properties across their

14 brands complete sex trafficking training." (emphasis in original)

15      As this Court has held, though, nonfeasance does not give rise to civil liability under the

16 TVPRA. In *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22,

17 2010), this Court dismissed a Section 1595(a) claim against a man alleged to have been physically

18 present when his father forced the plaintiffs into involuntary servitude, "remind[ing the plaintiffs]

19 that they could not escape." Even though the claim against the father was adequately pled, this

20 Court dismissed the claim against the son. *Id.* at *1-3; *see also Ratha v. Phatthana Seafood Co.,*

21 *Ltd.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (more than mere

22 passive receipt of a benefit is required to satisfy TVPRA's participation requirement). The

23 Opposition's attempt to dismiss this case in a footnote fails. *Shuvalova* did not involve a "claim

24 under 18 U.S.C. section 1589;" no such civil claim exists, as section 1589 is a criminal statute.

25 Opp. at 6 n.8. As the court noted in *Shuvalova,* the plaintiffs asserted claims for violations of the

26 TVPRA, including under Section 1595. 2010 WL 5387770, at *3 n.3 "[a]lthough the TVPRA is a

27 criminal statute, section 1595 provides a private right of action under the Act."

28      Similarly and even more explicitly, the United States Court for the Northern District of

-4-

1  Georgia, in granting motions to dismiss in favor of franchisors, recently held that:

2
3
4
5

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) knowledge as to the benefit received from trafficking; (2) knowledge as to 'assisting, supporting or facilitation' trafficking; and (3) knowledge that the Plaintiff was either a minor or subject to force.

6  *Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga.

7  Apr. 13, 2020)(internal citation omitted) (emphasis added).[1] The Amended Complaint fails to

8  plead sufficiently any of these elements, but especially the second. The recent *Jane Doe* decisions

9  comport with the recent decisions of the Courts of Appeals who have analyzed the participation

10  element of the TVPRA. *See Bistline v. Parker,* 918 F.3d 849, 874 (10th Cir. 2019) (imposing

11  TVPRA "venture" liability where complaint "recount[ed] in great detail" how defendants

12  participated in "creating the intricate scheme" to enable forced labor and "were actively seeking to

13  enforce" their co-venturer's control); *United States v. Afyare*, 632 F. App'x 272, 282 (6th Cir.

14  2016) (noting that "[p]articipation in a venture" requires more than "mere negative

15  acquiescence"); *see also Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (venture liability

16  sufficiently pled where complaint specifically referenced conduct by the co-venturers establishing

17  knowledge of trafficking activity, including high-fiving traffickers and statements about "getting

18  this thing going again"). Without an overt act, some allegation of a defendant's actual knowledge

19  of the trafficking is required to establish participation in a venture.[2]

20

21
22
23  [1] *See also Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020); and *Jane Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020).

24
25
26
27  [2] Even *Gilbert v. U.S. Olympic Comm.*, on which Plaintiff relies, included allegations demonstrating the co-defendants' knowledge of the alleged venture beyond that of a mere commercial transaction in the ordinary course. The "perpetrators" were alleged to have raped the victims, while the "beneficiaries" were alleged to have formed an enterprise for the express purpose of covering up the perpetrators' crimes, including by "*making false and corrupting statements to Congress*." 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019). Nothing close to that level of knowledge is alleged here, as it pertains to Marriott International.

28

REPLY MPA IN SUPPORT OF MOT. TO DISMISS PLAINTIFF'S FIRST AMEND. COMPL.
CASE NO. 3:19-CV-08252-VC

1    Lastly, even the Plaintiff's authorities do not support their sweeping construction of the

2    statute. For example, in *A.B.*, the Court explained:

3        We disagree with A.B. to the extent she seeks us to find Congress imposed duties
         upon businesses to affirmatively prevent sex trafficking on their hotel properties
4        as businesses who financially benefit from trafficking through room rentals. We
         do not read the Act as requiring hotels (and other businesses or professions
5        possibly earning money from trafficking) to affirmatively stop the trafficking.

6    *Id.* at 11. Moreover, the Court explained:

7        Marriott argues A.B. alleges only general conduct in the hotel industry regarding sex
         trafficking imposes liability on Marriott. It is true A.B.'s amended complaint
8        inartfully includes numerous allegations regarding the problem of sex trafficking
         generally, the use of hotel and motel rooms as a venue for trafficking, efforts by
9        private organizations and the Department of Homeland Security to combat human
         trafficking, and news reports on sex trafficking incidents involving other victims and
10       other hotels. If A.B. made only these allegations, we may agree with Marriott.

11

12   *Id.* at 26. The Court went on, however, to describe allegations that were pertinent to *A.B.'s*

13   *trafficking.* By contrast, the Amended Complaint here relies only on "inartfully" pleaded

14   allegations regarding general conduct in the hotel industry and Marriott International's alleged

15   failures to prevent trafficking. FAC ¶¶ 24-74. Likewise, the Opposition misplaces reliance on *H.H.*

16   *v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *5 (S.D. Ohio Dec. 6, 2019) for

17   the proposition that "allegations that defendants rented rooms to people it knew or should have

18   known were engaged in sex trafficking" are "enough" to constitute "participation." Opp. at 5. It

19   omits, however, important factual allegations in that case, *e.g.:*

20   • "Plaintiff 'was discovered by hotel cleaning staff at the Defendant 6 Columbus tied to the
        guest room bed and despite her desperate pleas for help, the staff ignored her.' …
21

22   • '[A] female member of the hotel housekeeping staff … discovered the Plaintiff chained up
        in the bathroom of the hotel room out of which she was being trafficked' and 'despite the
23      Plaintiff's desperate pleas for help, the staff person ignored her.'"

24   *Id.* at *3. Even applying the Southern District of Ohio's broader beneficiary theory (which this

25   Court should *not* do, for the reasons discussed above), the allegations in this case are a far cry

26   from constituting "red flags" which made it "impossible for [staff] not to notice the victimization

27   of K.R." FAC ¶ 107. Simply put, the paucity of factual, Plaintiff-specific allegations in this case

28   foreclose any finding that the Amended Complaint has adequately pled Marriott International's

-6-

participation in a sex trafficking venture under any reading of the TVPRA.

**2.      Marriott International Neither Knew Nor Should Have Known That K.R.'s Traffickers Were Engaged In A Chapter 77 Violation.**

For similar reasons, Marriott International neither knew nor should have known that K.R. was being trafficked at the Westin. The Opposition's attempt to distinguish *Ratha v. Phatthana Seafood Co., Ltd.*, on the grounds that it was decided on summary judgment falls flat. Opp. at 9, n.13. The underlying principle remains the same regardless of a case's procedural posture: a plaintiff must plead, proffer evidence, and ultimately prove knowledge relevant to the trafficking of the individual *plaintiff*. Mere generalized knowledge or negligence in relation to sex trafficking, such as the "hospitality industry's" general alleged complicity in trafficking (FAC ¶¶ 24, 29, 58-61, 64-65, 74), references to other hotel companies not even parties to this case (FAC ¶ 61), and three reports about different crimes committed against unrelated victims in other states that had nothing to do with K.R (FAC ¶ 87.a.ix.), are not enough.

While the Opposition objects that Plaintiff "alleges facts specific to her own sex trafficking" (Opp. at 9), the Paragraphs cited on this page cannot support a reasonable inference that Marriott International knew or even should have known of K.R.'s trafficking. One Paragraph has nothing to do with Marriott International or any of its franchisees. *See* FAC ¶ 97 (Motel 6). Most relate to actions of K.R.'s unnamed trafficker, but do not suggest (even by inference) that anyone employed by the Westin knew or should have known about what was going on inside her hotel rooms. *See* FAC ¶¶ 95-96, 99. In fact, one allegation undercuts any such inference, indicating that K.R. was watched and monitored by her traffickers at all times to prevent escape. FAC ¶ 102. Simply put, allegations that K.R.'s trafficker walked "unabashedly" through the hotel lobby, paid for K.R.'s hotel room in cash, and that Westin staff saw condoms and unspecified "paraphernalia," do not support a reasonable inference that Marriott International knew or should have known that K.R. was being victimized in her hotel room.

**3.      Marriott International Did Not Knowingly Benefit From The Venture.**

Lastly, Marriott International did not "knowingly" benefit from the illegal venture. To be sure, the Amended Complaint alleges that Marriott International received a portion of revenues

REPLY MPA IN SUPPORT OF MOT. TO DISMISS PLAINTIFF'S FIRST AMEND. COMPL.
CASE NO. 3:19-CV-08252-VC

1    from the Westin where K.R. was allegedly trafficked. Opp. at 4 (citing FAC). As discussed above,

2    however, Marriott International did not know, nor should it have known, that any portion of that

3    revenue was derived from criminals who were trafficking K.R. *See supra* Part II.A.2. The

4    Opposition relies heavily on cases from the Southern District of Ohio for the proposition that the

5    "knowingly benefits" element "merely requires that Defendant knowingly receives a financial

6    benefit" and nothing more. Opp. at 5 (internal citation omitted). As discussed above (*supra* Part

7    II.A.1.), that court's reading of Section 1595(a) is incompatible with the text of the statute,

8    effectively nullifying key words (here, "knowingly"). The better construction of this element is

9    that it requires "knowledge as to the benefit received *from trafficking*," and allegations supporting

10   that element (properly construed) are conspicuously absent. *Jane Doe 2 v. Red Roof Inns, Inc.*, No.

11   1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (emphasis added).

12   **B.    The Amended Complaint Does Not Plead An Agency Relationship.**

13          The Amended Complaint alleges an agency relationship with the Westin at which K.R.

14   was trafficked. (FAC ¶¶ 11, 75, 78-79, 87.a.vi.) As Marriott International explained in its Motion

15   to Dismiss, if the Amended Complaint assumes that this relationship renders Marriott International

16   vicariously liable for K.R.'s trafficking based on an "actual and/or apparent agency relationship

17   with" the Westin (FAC ¶ 87.a.vi), that assumption is erroneous as a matter of California law.

18          The Opposition cites *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541, 547 (1971) and

19   other authorities for the proposition that a franchisee may be a franchisor's agent if the former

20   retains the right to control the latter. Opp. at 10. Marriott International does not dispute this

21   general proposition of law. The factual allegations cited in Opposition, however—that Marriott

22   International could demand conformity to brand standards, conduct periodic inspections, and

23   terminate the agreement if the Westin failed to meet those standards—even if true, would not

24   establish a "right to control" the Westin in the sense required to create an agency relationship.

25          The cases cited in Marriott International's Motion to Dismiss are instructive because they

26   (1) applied principles of agency law similar to California's and (2) were decided on a motion to

27   dismiss posture. These cases also turned on the principal's right to control the agent. *N.T. v. Taco

28   Bell Corp.,* 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019), which hinged on whether Taco Bell

1   retained a "right of control" over its franchisee's daily operations, is illustrative. As here, the

2   Plaintiff cited the correct legal test and argued "that '[t]his [*i.e.*, retention of the right to control the

3   franchisee's operations] is precisely what Plaintiff has asserted in her Complaint." *Id.* The Court

4   rejected that argument, finding that that Taco Bell's alleged duties to provide rules regarding

5   operations, oversee operations, and ensure that franchisees maintained safe working environments,

6   were "prime examples of the type of conclusory allegations that are insufficient, under *Twombly*

7   and *Iqbal*, to state a plausible claim." *Id.* Allegations of Marriott International's retention of

8   control necessary to provide training and impose strict rules of operation are similarly conclusory.

9   Opp. at 11. Moreover, "the imposition of quality and operational requirements by contract

10  suggests that the franchisor does *not* intervene in the daily operation and management of the

11  independent business of the franchisee." *N.T.*, 411 F. Supp. at 1197 (emphasis added, internal

12  citation omitted).[3] Thus, many of the Amended Complaint's allegations actively undercut any

13  reasonable inference that Marriott International controls the daily operation and management of

14  the Westin, and nowhere are there factual allegations supporting that dispositive predicate.

15          **C.      The Amended Complaint Fails to Plead A Cal. Civ. Code § 52.5 Claim.**

16          As explained in its Motion to Dismiss, Plaintiff's claim under California Civil Code

17  Section 52.5 is even weaker, as it fails to allege the requisite element of intent. In Opposition,

18  Plaintiff states that Marriott International "attempts to insert an additional 'intent' element into the

19  CTVPA where none exists." Opp. at 13-14. This argument fails. *First,* every court to substantively

20  analyze Section 52.5 has required an intent element. *See Lofthus v. Long Beach Veterans Hosp.*,

21  214 F. Supp. 3d 908, 916 (C.D. Cal. 2016); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS

22  (NLS), 2018 WL 2193644, at \*15 (S.D. Cal. May 14, 2018); *Talib v. Guerrero*, No. CV 15-3825-

23  JAK (DFM), 2015 WL 7428511, at \*11 (C.D. Cal. Nov. 20, 2015) (second dismissal, with leave

24  to amend); *Talib v. Guerrero*, No. CV 15-03825-JAK (DFM), 2016 WL 1470082, \*11 (C.D. Cal.

25  Mar. 14, 2016) (third dismissal, without leave to amend). *Second*, because the statute does not

26  ───────────────

27  [3] The Opposition claims that these cases "do not compel" dismissal, it does not explain why, but
    instead simply summarizes the holding of each case in a few words. Opp. at 11-12 n.14.

28

REPLY MPA IN SUPPORT OF MOT. TO DISMISS PLAINTIFF'S FIRST AMEND. COMPL.
CASE NO. 3:19-CV-08252-VC

1  expressly limit who may be sued, the Opposition's construction, negating this incorporation by

2  reference, would allow a plaintiff to sue *anyone* upon showing that someone else committed a

3  Section 236.1 violation—an absurd result. In addition, the legislative history overwhelmingly

4  supports that Section 52.5 allows a civil remedy only against traffickers, not alleged beneficiaries.

5  The legislative history explains that "[t]his bill creates a civil cause of action, *in order to hold*

6  *human traffickers liable* for unlawful acts against their victims. Accordingly, this bill allows

7  victims of human trafficking to sue *those who trafficked them* for money damages." Bill Analysis

8  of Assembly Bill 22, 2005 Assembly Committee on Judiciary, Regular Session (Cal. Apr. 28,

9  2005) (emphasis added).[4] *Third*, the Opposition's characterization of *Talib v. Guerrero* as mere

10  "dicta" is unpersuasive given that that case explicitly referenced a prior order dismissing

11  trafficking claims "*because Plaintiffs did not allege that Defendants acted with the intent* to

12  obtained forced labor or service." *Id.* at *2 (emphasis added). *Fourth*, if Marriott International and

13  the *Talib* Court are guilty of "inserting" the element of intent, then so are the California Civil Jury

14  Instructions for Section 52.5 claims. *See* West's Committee on California Civil Jury Instructions,

15  Cal. Jury Instr.--Civ. 11.49.6 (2017) (requiring proof of civil defendant's "intent" to prove a

16  Section 52.5 claim). *Fifth*, the Opposition's citation to legislative history suggesting that the

17  burden of proof should not be beyond a reasonable doubt (Opp. at 14) is a red herring, as the issue

18  for purposes of this Motion to Dismiss is whether proof of the element of intent is required, not

19  what the general burden of proof should be at trial. *Sixth* and last, even assuming (*arguendo*) that

20  this Court construes Section 52.5 and the TVPRA synonymously—despite their radically different

21  language—the Section 52.5 claim must be dismissed for the same reasons that the Complaint's

22  TVPRA claim is fatally defective. *See supra* Part II.A.

23  **III.   CONCLUSION**

24      For the foregoing reasons and those in its Motion to Dismiss, Marriott International

25  respectfully requests that the Court grant its motion with prejudice.

26  _____

27  [4] *Available at* www.leginfo.ca.gov/pub/05-06/bill/asm/ab_0001-
0050/ab_22_cfa_20050428_095213_asm_comm.html.

28

1

2    Dated: May 7, 2020                          DLA PIPER LLP (US)

3

4                                                By: _____
                                                 MICHAEL P. O'DAY (*pro hac vice* pending)
5                                                ELLEN E. DEW (*pro hac vice* pending)
                                                 AMANDA L. MORGAN
6                                                Attorneys for Defendant Marriott International

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-