MICHAEL P. O'DAY (admitted *pro hac vice*)
michael.oday@us.dlapiper.com
ELLEN E. DEW (admitted *pro hac vice*)
ellen.dew@us.dlapiper.com
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:    410.580.3000
Fax:   410.580.3001

AMANDA L. MORGAN (Bar No. 246277)
amanda.morgan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:   415.836.2501

Attorneys for Defendant
Marriott International, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| K.R., an individual,<br><br>            Plaintiff,<br><br>        vs.<br><br>G6 HOSPITALITY, LLC; and<br>MARRIOTT INTERNATIONAL, INC.,<br><br>            Defendants. | CASE NO. 3:19-CV-08252-VC<br><br>**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 27, 2020<br>Time:        10:00 a.m.<br>Ctrm.:       4 - 17th Floor<br>Judge:       Hon. Vince Chhabria<br><br>Action Filed:      December 19, 2019<br>SAC Filed:         July 2, 2020<br>Trial Date:         TBD |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on August 27, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the above entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendant Marriott International, Inc., will and hereby does move this Court for an order dismissing Plaintiff K.R.'s Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant requests the Court dismiss Plaintiff's Second Amended Complaint with prejudice on the ground that Plaintiff fails to state a claim upon which relief can be granted. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Court's files in this action, the oral argument of counsel at the hearing, and on such materials and evidence as may be presented to the Court.

Dated: July 16, 2020                    DLA PIPER LLP (US)


By: _____
          MICHAEL P. O'DAY (admitted *pro hac vice*)
          ELLEN E. DEW (admitted *pro hac vice*)
          AMANDA L. MORGAN
          Attorneys for Defendant
          Marriott International, Inc.

1

## TABLE OF CONTENTS

2

**Page**

3

I.     INTRODUCTION .................................................................................... 1

4

II.    FACTUAL BACKGROUND ................................................................... 3

5

III.   LEGAL STANDARD .............................................................................. 5

6

IV.   ARGUMENT ........................................................................................... 5

7

     A.    THE SAC FAILS TO ALLEGE A SUCCESSOR LIABILITY CLAIM AGAINST MARRIOTT INTERNATIONAL. ....................................................... 5

8

9

     B.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM. ................ 6

10

           1.    Plaintiff Failed to Allege That Marriott International "Knew or Should Have Known" About the Sex Trafficking of K.R. ......................... 7

11

12

           2.    Plaintiff Failed to Allege That Marriott International "Knowingly" Benefited from A Sex Trafficking Venture ................................................. 8

13

           3.    Plaintiff Failed to Allege Marriott International's "Participation" In A Sex "Trafficking Venture" .......................................................................... 9

14

     C.    PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE WESTIN HOTEL ........................................................... 11

15

16

17

     D.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 52.5 ........................................................................................................ 14

18

V.     CONCLUSION ...................................................................................... 15

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

Cases

3

4    *Acedo v. DMAX, Ltd.*,
     No. CV 15-02443MMMASX, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015).......................13

5

6    *Ambrose v. Avis Rent a Car Sys. Inc.*,
     2014 WL 6976114 (C.D. Cal. Dec. 8, 2014) ...........................................................................12

7    *Arguello v. Conoco*,
     207 F.3d 803 (5th Cir. 2000)....................................................................................................12

8

9    *Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ...................................................................................................................5

10   *Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ...................................................................................................................5

11

12   *Canosa v. Ziff*,
     No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019).......................................8

13

     *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*,
14   2012 WL 178341 (W.D. Va. Jan. 23, 2012) .............................................................................12

15   *Cha v. Hooters of Am., LLC*,
     No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) ...........................13

16

17   *Florida Abolitionist v. Backpage.com LLC*,
     No. 617CV218ORL28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018) ..............................7

18

19   *Geiss v. Weinstein Co. Holdings LLC*,
     383 F. Supp. 3d 156 (S.D.N.Y. 2019)......................................................................................10

20   *J.C. v. Choice Hotels International, Inc.*,
     20-cv-00155-WHO, Dkt. 79, Order Granting Motions to Dismiss With Leave to

21   Amend (N.D. Cal. June 5, 2020)..............................................................................................14

22   *Jane Doe 2 v. Red Roof Inns, Inc.*,
     No. 1:19-cv-3841, 2020 WL 1872337, slip op. (N.D. Ga. Apr. 13, 2020) ...............................10

23

24   *Jean Charles v. Perlitz*,
     937 F. Supp. 2d 276 (D. Conn. 2013) ......................................................................................12

25

26   *Jones v. Royal Admin. Servs., Inc.*,
     887 F.3d 443 (9th Cir. 2018)....................................................................................................12

27   *Lofthus v. Long Beach Veterans Hosp.*,
     214 F. Supp. 3d 908 (C.D. Cal. 2016)......................................................................................14

28

*Medrano v. Great Mercantile Agency, Inc.*,
   2019 WL 3366108 (E.D. Cal. June 17, 2019) ...........................................................................8

*N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*,
   124 F.3d 1094 (9th Cir. 1997) ..............................................................................................13

*N.T. v. Taco Bell Corp.*,
   411 F. Supp. 3d 1192 (D. Kan. 2019) ..................................................................................13

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ..................................................................................10

*Owino v. CoreCivic, Inc.*,
   No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ........................15

*People v. Halim*,
   14 Cal. App. 5th 632 (2017) ................................................................................................15

*Ratha v. Phatthana Seafood Co., Ltd.*,
   No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ........................7

*Shuvalova v. Cunningham*,
   No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ...........................................10

*Silicon Labs Integration, Inc. v. Melman*,
   2010 WL 1838945 (N.D. Cal. May 4, 2010) ..........................................................................8

*Talib v. Guerrero*,
   No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) ...........................15

*Temple v. McDonald's Corp.*,
   No. CIV.A.11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) .......................................13

*United States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016)......................................................................................9, 10

*United States v. Coppin*,
   1 F. App'x 283 (6th Cir. 2001).............................................................................................9

*United States v. Sterling Centrecorp Inc.*,
   960 F. Supp. 2d 1025 (E.D. Cal. 2013) ................................................................................5

**STATUTES**

18 U.S.C. § 1591 ....................................................................................................................6

18 U.S.C. § 1591(e)(4) .........................................................................................................10

18 U.S.C. § 1595 ....................................................................................................................9

18 U.S.C. § 1595(a) ................................................................................................ passim

Cal. Civ. Code § 52.5 ...........................................................................................2, 14, 15

Penal Code § 236.1 ........................................................................................................15

Penal Code § 236.1(a) ...................................................................................................15

**OTHER AUTHORITIES**

Fed R. Civ. P. § 8(a) .....................................................................................................14

Fed R. Civ. P. § 12(b)(6) ................................................................................................5

Marriott – Terms of Use and Privacy Notice, available
    https://www.marriott.com/marriott/internet-access/termsofuse.mi, last accessed
    July 16, 2020 ........................................................................................................3, 14

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff K.R.'s Second Amended Complaint ("SAC") does precisely what this Court warned Plaintiff not to do: "add[s] a bunch of stuff to this already very confusing sort of poorly-drafted Complaint."  Dkt. 52 (June 4, 2020, Hearing Transcript), at 48:7-25. The "stuff" the SAC adds are improper legal conclusions (SAC ¶¶ 11(g), (h), 148, 153), unsupported facts pled on information and belief (¶¶ 82, 83, 88-89), immaterial allegations that postdate Plaintiff's trafficking (¶¶ 87(d), 90, 91, 117 and n. 108), and more allegations that Defendant Marriott International, Inc. ("Marriott International") had general knowledge of sex trafficking and took corporate responsibility measures unrelated to both Plaintiff and Starwood Hotels and Resorts ("Starwood"), the franchisor of the local Westin hotel during the relevant time period (SAC ¶¶ 11, 83-86, 90, 149). The SAC, with all this new "stuff," continues to "bounce[] back and forth in a very vague way between what was known by the local hotels and what was known by the chains" (Dkt. 52 at 48:19-20) – notably, the SAC does not even allege a separate *cause of action* based on vicarious liability. *See* SAC ¶¶ 210-220 (alleging only the elements for direct liability); ¶¶ 210-214 (incorporating by reference in the direct liability claim all allegations about G6 and incidents at the Motel 6 Oakland that have nothing to do with the local Westin hotel, Starwood or Marriott). Thus, for the same reasons the prior complaints were deficient, this one is as well. Plaintiff has now taken her "best shot," and the SAC should be dismissed with prejudice.

Apart from the fact the SAC fails to cure prior deficiencies, the SAC is clear on one point: none of the allegations against Marriott International are relevant to Plaintiff's trafficking. The SAC is premised on Marriott International's successor liability without any facts regarding the alleged wrongful acts of the predecessor Starwood. According to the SAC, "K.R. was [trafficked] at the Defendants' hotels from 2006-2016." SAC ¶ 28. "**As of 2016**, Starwood Hotels and Resorts, LLC f/k/a Starwood Hotels and Resorts Worldwide, Inc. is a wholly owned subsidiary of Marriott." SAC ¶ 11(b) (emphasis added). By virtue of the merger, Plaintiff alleges that "Defendant Marriott is the successor entity to Starwood Hotels and Resorts Worldwide, Inc. and retains **successor liability for the wrongful acts of the predecessor**." SAC ¶ 11(a) (emphasis added).

These allegations (correctly) explain that Marriott International did not own the Westin brand at the time of Plaintiff's trafficking. The Westin brand was owned and franchised by Starwood, a different hotel company and competitor of Marriott prior to the merger in 2016.  Thus, all of Plaintiff's allegations against Marriott International fall under two categories, both irrelevant to Plaintiff's trafficking: (1) allegations from 2006-2016, when Starwood owned the Westin brand and the local Westin San Francisco Airport Hotel (the "Hotel") was part of the Westin franchise system (not Marriott franchise system); and (2) allegations after 2016, when Marriott International owned the Westin brand and the Hotel became part of the Marriott franchise system but that postdate the alleged trafficking at the local Hotel. Despite being fully aware of this and relying on successor liability (Dkt. 52 at 28:10-24), the SAC makes no attempt to establish the liability of Starwood during the relevant time frame, and Plaintiff therefore cannot hold Marriott International liable as a successor entity. Allegations about Marriott International before 2016 are immaterial to Starwood's relationship with the local Westin Hotel or K.R.'s alleged trafficking incidents at the local Hotel.

To the extent the Court analyzes Marriott International's successor liability for Plaintiff's alleged injuries at the local Hotel, the SAC should still be dismissed for at least two principal reasons.[1] *First*, the SAC fails to plead facts sufficient to state a Trafficking Victims Protection and Reauthorization Act ("TVPRA") claim that Marriott International knowingly benefited from and participated in the trafficking of K.R. The thrust of the SAC is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry. But the SAC lacks any factual allegations that Marriott International knew, should have known, or even plausibly could have known that K.R. was trafficked at the local Hotel. Plaintiff's second claim under California Civil Code Section 52.5 is even more deficient because as previously stated by this Court it requires pleading and proving *intent*—not merely knowledge. Ignoring this requirement, Plaintiff failed to add facts regarding intent. The SAC still does not—and cannot—plead that Marriott International had "intent to obtain forced labor or services" from K.R.

---

[1] Plaintiff's claims against Marriott are even more confusing as a result of the failure to allege Starwood's acts or omissions. Nevertheless, even if the same allegations were made against Starwood (which is not plausible), the SAC still fails to state a claim and should be dismissed.

*Second*, the SAC fails to allege adequate facts to support a claim for vicarious liability. The SAC fails to allege facts showing the actual exercise of day-to-day control over the particular instrumentality of the harm (as required by federal common law of agency). Allegations that Marriott International has the right to enforce uniform standards under a franchise agreement – that could not even apply because the local Hotel was part of Starwood's Westin franchise – cannot create an agency relationship sufficient to establish vicarious liability.  Thus, Marriott International respectfully requests that this Court dismiss Plaintiff's claims against it with prejudice.

## II.     FACTUAL BACKGROUND

The SAC is Plaintiff's third attempt to state a claim, after having two rounds of briefing on prior motions to dismiss and then being given another opportunity to correct the issues noted by this Court and raised in the prior briefing. A fourth attempt is not warranted. Although the allegations regarding K.R.'s victimization by her traffickers are appalling and tragic, the allegations against Marriott International in the SAC are no different than the prior two deficient tries: confusing, vague and conclusory.

While the SAC largely rearranges the sections from the prior complaint, adds new allegations mischaracterizing Marriott International's internet policy in 2020 (four years after K.R.'s trafficking), and makes new allegations upon "information and belief," it essentially follows the same confusing formula, provides no allegations about Starwood, and fails to state a claim. The SAC's reliance on Marriott International's general internet policy highlights the absence of relevant facts to state a claim. *See* SAC ¶¶ 103-125. These allegations are made under the untenable theory that Marriott International is "[i]n violation of [its] federal statutory obligation under the TVPRA" because Marriott International did *not* track its guest's usage activity. SAC ¶¶ 122-125. However, there is no duty under the TVPRA for a hotel to track the websites that guests visit, and the SAC alleges none. Instead, the SAC distorts that policy by mischaracterizing it and omitting key language: "This Service is provided by one or more third party service providers (collectively, 'Vendors')" and that usage activity "is maintained for system performance and maintenance purposes and system security requirements." Marriott – Terms of Use and Privacy Notice, available https://www.marriott.com/marriott/internet-access/termsofuse.mi, last accessed July 16, 2020. In

1  other words, this policy does not suggest that any *Marriott International* employee actively reviews

2  the usage activity of guests. Further, it is also irrelevant as there are no allegations *K.R.*'s traffickers

3  used the local Hotel's Wi-Fi to access Backpage.com or Craigslist.com, or that Marriott

4  International's website tracking could have plausibly made it aware that K.R. was being trafficked.

5  Moreover, Marriott's 2020 internet policy is immaterial and unrelated to the Starwood

6  policies during the period of the alleged trafficking. Any allegations of Marriott International's

7  control over the local Hotel at the time of K.R.'s trafficking are implausible, as they are contradicted

8  by Plaintiff's pleading that Marriott International did not acquire Starwood (and with it the Westin

9  brand) until 2016 – the year Plaintiff's trafficking ended. SAC ¶¶ 11(b), 28. The SAC cites statistics,

10  news articles, general statements and policy reports on sex trafficking (SAC ¶¶ 46-81), generalities

11  concerning franchisors' alleged "control" over their "local hotels" (SAC ¶¶ 141-146, 153-157), and

12  reports of crimes involving different hotels in other states (SAC ¶ 87). None of this relates to the

13  alleged criminal acts carried out against K.R. by her traffickers. It is immaterial.

14  When it comes to telling K.R.'s story, the SAC tells a brief but disturbing account of her

15  kidnapping and victimization by unnamed criminal sex traffickers, including allegedly at the local

16  Westin Hotel that was franchised under the Starwood brand, between 2006-2016. SAC ¶¶ 7, 8, 31,

17  130. The traffickers concealed their crimes through physical and psychological violence and K.R.

18  had virtually no contact with hotel staff. SAC ¶¶ 28-45.

19  The SAC then adds a "new" allegation *upon information and belief* that the local Hotel staff

20  were aware of Plaintiff's trafficking <u>and</u> reported it to Marriott International (SAC ¶ 160) – an

21  implausible allegation considering that the Westin brand was not part of the Marriott International

22  franchise system at the time (SAC ¶¶ 11(b), 28). As such these new "information and belief"

23  allegations are entirely implausible and lacking in factual support and should be disregarded. The

24  SAC then concludes that Marriott International failed to take "reasonable measures" that somehow

25  would have revealed the criminal activity and prevented the traffickers' crimes. SAC ¶ 202. But the

26  TVPRA does not impose a duty on franchisors to stop human trafficking and nowhere does the SAC

27  allege facts suggesting that Marriott International was aware of the criminal incidents, knowingly

28  benefited from the trafficking, or participated in the sex trafficking of K.R.

III.   **LEGAL STANDARD**

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although factual allegations are accepted as true, "labels and conclusions" are given no deference. *Twombly*, 550 U.S. at 545 (internal citations omitted).

IV.   **ARGUMENT**

   A.   **THE SAC FAILS TO ALLEGE A SUCCESSOR LIABILITY CLAIM AGAINST MARRIOTT INTERNATIONAL.**

The SAC states that Marriott International acquired Starwood in 2016, the year Plaintiff's trafficking ended. SAC ¶¶ 11(b), 28. Before that time, Starwood owned the Westin brand and the local Hotel was part of the Starwood franchise system. Plaintiff acknowledges that Marriott International is liable only as Starwood's "successor entity" (SAC ¶ 11(a)), yet fails to then plead any relevant facts to *Starwood*'s liability where the threshold for successor liability is showing *predecessor* liability. *See* SAC ¶ 11(a). Only if predecessor liability is shown, "[s]uccessor liability exists when the parties have, through agreements, words, or conduct, indicated their intent to shift liability from one party to another." *United States v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1035 (E.D. Cal. 2013).

The SAC fails to plausibly allege successor liability. *First*, Plaintiff fails to include any allegations regarding Starwood's direct or vicarious liability for K.R.'s trafficking. *Second*, Plaintiff fails to plead any basis that Marriott International assumed Starwood's liability, if any.

Instead of pleading any basis for successor liability, Plaintiff focuses on Marriott International's alleged direct and vicarious liability for crimes that occurred at the Hotel during a

time when *Marriott International had no connection to the Hotel or even the Westin brand.*[2] These allegations are implausible on their face:

- Marriott International cannot plausibly be held liable under an agency theory for the actions of the staff of a local hotel within Starwood's franchise system. *See* SAC ¶¶ 147-167.

- Marriott International could not plausibly have knowingly benefited from, participated in, or knew or should have known of, the trafficking of K.R. at the local Westin Hotel prior to the acquisition of Starwood. *See* SAC ¶¶ 188-209.

Likewise, Marriott International cannot plausibly be held liable for actions it took *after* acquiring Starwood and assuming the franchise agreement for the Hotel, *because those actions postdate Plaintiff's alleged trafficking. See, e.g.*, SAC ¶¶ 87(d), 90, 91, 117 and n. 108.

Accordingly, there is not a single fact alleged against Marriott International plausibly related to Plaintiff's injuries, and the SAC should be dismissed.

## B.     PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM.

Even if Marriott International could be held liable for injuries at a Starwood brand hotel based on the SAC allegations against Marriott International as opposed to Starwood, Plaintiff still fails to state a claim under the TVPRA. In enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion. 18 U.S.C. § 1591. Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in and benefit from sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a) (emphasis added). The SAC does not allege that Marriott International was a

---

[2] Marriott International acquired Starwood, and with it the Westin brand and became subject to the existing Starwood hotel agreements, in September 2016. Even if the SAC is read generously, such that K.R.'s trafficking postdated Marriott International's acquisition of Starwood (from late September through December 2016), the SAC still fails to allege a single relevant fact regarding Marriott International because there are no allegations specific to these months.

"perpetrator" of the trafficking of K.R. Rather, it alleges in a conclusory manner that Marriott International financially benefited from and participated in a venture by unnamed sex traffickers. SAC ¶ 9. The SAC is fatally defective, however, because it does not (and cannot in good faith) allege any facts suggesting that Marriott International plausibly knew or should have known about K.R.'s tormentors or knowingly benefited from their crimes, let alone "participated" in those crimes.

### 1.  Plaintiff Failed to Allege That Marriott International "Knew or Should Have Known" About the Sex Trafficking of K.R.

The crux of the SAC is that Marriott International "knew, or should have known" (SAC ¶ 191) that K.R. was being victimized by criminal sex traffickers because "the hospitality industry" is complicit in sex trafficking and Marriott International is aware that sex trafficking can occur at hotels. SAC ¶¶ 46-91. These allegations are similar to other complaints filed throughout the country against many different franchisors, and have very little to do with Marriott International or K.R. As a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of K.R.'s sex trafficking. *See Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5-6 (C.D. Cal. Dec. 21, 2017) *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018).

The SAC attempts to establish notice of K.R.'s trafficking based on reports about crimes at Westin hotels that had nothing to do with K.R. *See* SAC ¶ 87. These reports could not have put Marriott International on notice of K.R.'s victimization and are irrelevant, because they related to incidents that occurred at hotels in different states, involved different crimes (prostitution, assault, and murder), different victims, and mostly occurred at a time Marriott International was not associated with the Westin brand. Indeed, the sole incident that occurred after Marriott International acquired the Westin brand also occurred *after* K.R. escaped from her captors.

The allegations about K.R. likewise lack any content related to Marriott International. The SAC alleges "on information and belief" that the local Hotel staff "were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant Marriott." SAC ¶ 160. Because the SAC fails to state facts explaining what this "information and

belief" is based on, the allegation should therefore be disregarded. *See Silicon Labs Integration, Inc. v. Melman*, 2010 WL 1838945, at *3 n. 1 (N.D. Cal. May 4, 2010) ("The court has not considered any facts purportedly based upon information and belief. No explanation was provided by [plaintiff] as to what information allowed it [ ] to assert the beliefs alleged"); *Medrano v. Great Mercantile Agency, Inc.*, 2019 WL 3366108, at *4 (E.D. Cal. June 17, 2019) ("an allegation made on information and belief is only sufficient when it is supported with a statement of the facts upon which the belief is based") (citation and quotation marks omitted). Further, it is implausible that Marriott International would receive *any* reports from a Westin hotel that was part of the Starwood brand at the time.

Simply put, these criminals were unknown to Marriott International. There is no suggestion that K.R. had contact with any employees of Marriott International. And the SAC alleges no facts to suggest that Marriott International knew or should have known that K.R. was being trafficked at the local Hotel.

### 2. Plaintiff Failed to Allege That Marriott International "Knowingly" Benefited from A Sex Trafficking Venture

For the same reasons, the TVPRA claim must be dismissed because the SAC does not allege that Marriott International "knowingly" benefited from a sex trafficking venture. 18 U.S.C. § 1595(a). Apart from reciting conclusory labels, the SAC alleges that Marriott International "rented rooms to K.R.'s traffickers knowing, or should have known, that they were using the room to [traffic] K.R." SAC ¶ 190. But there are no facts from which Marriott International had any reason to suspect that the rooms were used to commit sex trafficking crimes as alleged by the SAC. *See supra* Part I. While franchisors may receive a royalty from the overall revenues from the business of the franchisee hotel, the franchisee's collection of rent from guests in the ordinary course of business cannot support a reasonable inference that a franchisor "knowingly" benefited from crimes committed in those rooms. *See, e.g., Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (internal citations omitted) (noting that a defendant cannot be held civilly liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

Further, Marriott International did not benefit from any rooms the traffickers rented between

2006-2016, including to K.R.'s traffickers, because Marriott International had no connection to the local Hotel during that period. SAC ¶ 11(b).

### 3.   Plaintiff Failed to Allege Marriott International's "Participation" In A Sex "Trafficking Venture"

The SAC also falls short of alleging any facts that Marriott International (1) "participated" in (2) a "sex trafficking venture." 18 U.S.C. § 1595(a). The relevant language in Section 1595(a) reads: "whoever knowingly benefits, financially or by receiving anything of value from *participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*." (Emphasis added). There are two distinct requirements set forth in this italicized language: the "participation" requirement and the intent requirement ("knew or should have known", discussed *supra* Part I). Regarding the "participation" requirement, Section 1595 requires participation *in a sex trafficking venture*. This construction is based on a plain reading of the phrase and supported by case law analyzing the *same language* in the criminal context.

Grammatically, the verb phrase "has engaged in an act in violation of this chapter" requires identifying the object of the clause – i.e., the *noun* that "has engaged in an act in violation of this chapter." Reading back, the noun "venture" is that object – it is the "venture" that engaged in a violation of the chapter (sex trafficking). And the civil defendant must "participat[e] in" this same "venture." Put together, the plain language requires showing a civil defendant participated in a venture that has engaged in sex trafficking – i.e., a *sex trafficking* venture. The language of intent ("knew or should have known") relates to the criminal violation of the act by the trafficker and does not alter the basic grammatical reading that the "venture" is the object to the verb phrase "has engaged in an act in violation of this chapter."

This interpretation is supported by the United States Court of Appeals for the Sixth Circuit, that recently held liability under the TVPRA requires (1) an *overt act* of participation in (2) a *sex trafficking* venture (not merely *any* "venture"). *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016); *cf. United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy") (citations omitted). *Afyare* reached this conclusion by engaging in a plain meaning analysis, citing Black's

Law Dictionary. *Id*. at 279, 283-84.[3] The language in Section 1595(a), which has the same object (venture) and the same verb phrase (has engaged in sex trafficking), should be read to have the same "participation" requirement: participation in a *sex trafficking* venture.

Granting multiple motions to dismiss a similar complaint filed by several national hotel franchisors, the United States District Court for the Northern District of Georgia recently held that:

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) knowledge as to the benefit received from trafficking; (2) knowledge as to 'assisting, supporting or facilitating' trafficking; and (3) knowledge that the Plaintiff was either a minor or subject to force.

*Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (internal citation omitted) (emphasis added). "Because guilt, or in this case liability, cannot be established by association alone, *Plaintiff must allege specific conduct that furthered the sex trafficking venture. . . . In other words, some participation in the sex trafficking act itself must be shown*." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (citing *Afyare*, 632 F. App'x at 285 (emphasis added)); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities ...." ) (internal citation omitted, emphasis in original)).

These principles are in accord with how this Court has applied the TVPRA. In *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010), plaintiffs filed TVPRA claims, alleging that a man named Joe and his son, Dan, forced them into involuntary servitude. *Id.* at *1-3. Even though the plaintiffs adequately stated a claim against Joe, this Court dismissed the claim against Dan, finding that the allegations that Joe had Dan's "help" in trafficking the plaintiffs because Dan was a "very large man" and his "physical presence" in the room served as a conspicuous reminder to the victims "that they could not escape," was *not* enough to state a claim. *Id.* at *3. It was not an overt act.

---

[3] *Afyare*'s analysis did not rely on § 1591(e)(4), which was added in 2018 – after *Afyare* was decided.

Here, the SAC altogether fails to allege that Marriott International "participated" in any "sex trafficking venture." First, there is no allegation that Marriott International had any association with a "sex trafficking venture." The only "venture" that Marriott International is alleged to have is a lawful relationship with the local Hotel. Yet the only "venture" relevant for purposes of the TVPRA is the "sex trafficking venture" committed by unnamed criminals—with whom the SAC does not suggest that Marriott International had *any* association. Second, and more fundamentally, there is no allegation that Marriott International committed any overt act in furtherance of that sex trafficking venture nor is there even any allegation of any action taken by Marriott International demonstrating its knowledge of the sex trafficking venture and its acquiescence to the operation of that venture. Indeed, if Marriott International did not even know and could not have known about the sex trafficking venture (*see supra* Part 1.), then it did not and could not have "participated" in that venture. The SAC asserts only the legal conclusion that Marriott International "actively participated in this illegal endeavor [of trafficking K.R.]." SAC ¶ 200. Yet it fails to assert any factual allegations to support that conclusion. There is no single allegation of contact between Marriott International and the criminal trafficking venture or even Plaintiff. The SAC contains no facts about how Marriott International allegedly participated in the unnamed criminal sex trafficking "venture" which exploited K.R.

### C.  PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE WESTIN HOTEL

The SAC alleges a franchisor-franchisee relationship between Marriott and the local Westin Hotel and attempts to hold Marriott International vicariously liable for acts of the staff at the local Hotel. (SAC ¶¶ 11, 141-167.) But the SAC does not plead sufficient facts to plausibly allege an agency theory against Marriott International. Again, the SAC erroneously makes allegations about Marriott International's alleged control despite its assertion that Marriott International's successor liability is based on Starwood's conduct prior to the acquisition in 2016 (which should focus on Starwood, not Marriott International). The proper inquiry based on the relevant time period is whether the local Hotel was an agent of *Starwood*, not Marriott International.

By its plain language, § 1595(a) extended civil liability beyond the criminal perpetrators **only to** those who knowingly benefit from participation in ventures with the criminals – but, contrary to Plaintiff's claim, the statute **did not** extend liability even further to franchisors based on the alleged participation by staff of a franchisee. There is no language in the TVPRA that allows secondary or vicarious liability in the context of franchisor agency. *Accord Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (dismissing a claim for aiding and abetting under § 1595(a) and finding that secondary liability is unavailable where the statute is silent). Accordingly, Plaintiff's attempt to imply secondary liability for franchisors under § 1595(a) should be rejected.

Even if secondary liability were available under the TVPRA, the SAC also makes the unsupported assumption that Marriott International's status as a franchisor makes it responsible for the acts or omissions of the local Westin Hotel's staff with respect to K.R.'s trafficking. That assumption is not correct and the SAC lacks sufficient allegations to support vicarious liability.

Applying federal common law of agency, the SAC fails to allege facts showing that Marriott International exercised control over the particular instrumentality of the harm to Plaintiff. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018) (under the federal common law of agency the court looks to "the extent of control exercised by the [principal] [as] the essential ingredient") (citation and quotation marks omitted); *Arguello v. Conoco*, 207 F.3d 803, 807 (5th Cir. 2000) (finding no agency liability where franchisor had no "participation in the daily operations of the branded stores nor that [the franchisor] participates in making personnel decisions," and because the contract language stated the franchisees were not "agents" of the franchisor); *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 2012 WL 178341, at *21 (W.D. Va. Jan. 23, 2012) (rejecting agency liability under federal common law where defendant did not have "control over the actions of which [plaintiff] complains").[4]

Federal courts applying state laws, with substantially similar legal principles and a more lenient control standard, have found complaints alleging a franchisor-franchisee relationship

---

[4] The primary difference between federal and California agency law is that "the federal common law agency approach [ ] emphasizes actual exercise of control, not right to exercise control." *Ambrose v. Avis Rent a Car Sys. Inc.*, 2014 WL 6976114, at *10 (C.D. Cal. Dec. 8, 2014).

deficient. *See*, *e.g.*, *N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192 (D. Kan. 2019) (dismissing vicarious liability claim against franchisor under Kansas law); *Acedo v. DMAX, Ltd.*, No. CV 15-02443MMMASX, 2015 WL 12696176, at *29 (C.D. Cal. Nov. 13, 2015) (Michigan law); *Cha v. Hooters of Am., LLC*, No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) (New York law); *Temple v. McDonald's Corp.*, No. CIV.A.11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) (Maryland law).

These principles compel the same result here. The SAC does not allege facts showing that Marriott International had day-to-day control over the instrumentality of K.R.'s harm. Instead, the SAC merely alleges in conclusory fashion that Marriott International "exercise[d] [ ] ongoing and systemic right of control over . . . *one or more* of the following actions," including "setting employee wages" and "making employee decisions." SAC ¶ 157(c), (d). The SAC cannot pass the pleading stage through such speculation. Further, these conclusory allegations should be disregarded, and are, at best, misleading. As this Court discovered at the last hearing, Plaintiff's allegation of "setting employee wages" means only that Plaintiff alleges Marriott International requires employees are paid the legal minimum wage. *See* Dkt. 52, at 14:16–15:10. These allegations are insufficient to show day-to-day control of franchisee employees and to establish vicarious liability under federal common law.[5] The remaining conclusory allegations fare no better.[6]

To the extent Plaintiff's allegations regarding Marriott International's Terms of Use for wireless internet access are an attempt to demonstrate its control over the local Hotel, that attempt is belied by the very language of the Terms of Use policy on which Plaintiff relies. Plaintiff alleges

---

[5] The SAC also fails to state any claim based on vicarious liability under an apparent agency theory, for which a plaintiff must establish "something said or done by [Marriott International] . . . on which [K.R.] reasonably relied. *See N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). Among other things, the factual core of the entire SAC—that criminals trafficked K.R. in various hotels *against her will*—is incompatible with the notion that K.R. somehow "relied" (let alone reasonably relied) on the Hotel's apparent authority.

[6] For example, Plaintiff alleges that Marriott International, as a franchisor, controls the local Westin hotel through "building and maintaining the facility in a manner specified by the owner" and "regular inspection of the facility and operation by owner." SAC ¶ 157(h), (j). But Marriott International, as a franchisor, is not the owner of the property.

that Marriott International requires each hotel property to offer free internet service and alleges

further that Marriott International "failed to monitor internet use at hotels across their brands,

including the local hotels at issue in this case, in order to identify signs and perpetrators of

commercial sex trafficking operating within their walls." SAC ¶¶ 111, 122. These allegations imply

that such monitoring is both possible and required. Both are false. Indeed the very internet Terms

of Use from which Plaintiff quotes dispels Plaintiff's theory. In full, the Terms of Use provide:

> **This Service is provided by one or more third party service providers**
> **(collectively, "Vendors")** in conjunction with Marriott International, Inc.
> and its affiliated hotels (collectively, "Marriott") and hotel owners
> (collectively, the "Companies" or "We"). (emphasis added)….
>
> The Companies respect the privacy of all users of this Service at Marriott
> and affiliated hotels. ***This Service does not correlate the user of the service***
> ***with the sites visited or content viewed.*** We do record the room number of
> the user for billing purposes. The record of a specific name associated with
> that room number is stored in a separate database to protect the privacy of
> the user. A log of all usage activity relating to this Service is maintained
> ***for system performance and maintenance purposes and system security***
> ***requirements***. (emphasis added).[7]

Thus, the very Terms of Use on which Plaintiff bases her theory of control demonstrate that:

(1) wireless internet service is provided through a third-party vendor, not Marriott International, and

(2) the internet service does not correlate a specific user to the sites visited or content viewed. So

not only does Marriott International neither control nor monitor that service, it would be impossible

to do so in the manner that Plaintiff alleges.

**D.      PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 52.5**

Plaintiff's claim under California Civil Code Section 52.5 is even more defective. Ignoring

the statements by this Court that intent is a required element for a Section 52.5 claim,[8] the SAC still

fails to plead any "*intent* to obtain forced labor or services." *Lofthus v. Long Beach Veterans Hosp.*,

214 F. Supp. 3d 908, 916 (C.D. Cal. 2016) (emphasis added).

---

[7] Marriott – Terms of Use and Privacy Notice, *available at*
 https://www.marriott.com/marriott/internet-access/termsofuse.mi (last accessed, July 16, 2020).

[8] *See J.C. v. Choice Hotels International, Inc.*, 20-cv-00155-WHO, Dkt. 79, Order Granting Motions
to Dismiss With Leave to Amend, at 3 (N.D. Cal. June 5, 2020).

The elements of a Penal Code § 236.1(a) violation are that: "(1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person." *People v. Halim*, 14 Cal. App. 5th 632, 643 (2017) (internal citations omitted). Because Civil Code Section 52.5 incorporates Penal Code Section 236.1, civil claims under Section 52.5 must allege both these elements. *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *15 (S.D. Cal. May 14, 2018); *see also Talib v. Guerrero*, No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016).

The SAC fails to allege *either* element here. Instead, its Section 52.5 allegations merely parrot the conclusory TVPRA allegations that Defendants "facilitate[d]" her trafficking and financially benefited as a result. (*See* SAC ¶¶ 217-18.) This is insufficient; if the factual allegations fall short of suggesting that Marriott International even *knew* about the crimes committed against K.R. (*see supra* Section IV.B.1), it follows that they do not state a claim that Marriott International *intended* to obtain forced labor or services or benefit from those crimes.[9]

## V.    CONCLUSION

For the foregoing reasons, Marriott International respectfully requests that this Court dismiss Plaintiff's claims against Marriott International with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: July 16, 2020                    DLA PIPER LLP (US)


By: _____
        MICHAEL P. O'DAY (admitted *pro hac vice*)
        ELLEN E. DEW (admitted *pro hac vice*)
        AMANDA L. MORGAN
        Attorneys for Defendant
        Marriott International, Inc.

---

[9] The plain language of Section 52.5 makes clear that its scope of civil liability is narrower than that of the TVPRA. But even assuming (*arguendo*) that this Court construes Section 52.5 and the TVPRA *in pari materia*, the Section 52.5 claim should be dismissed for the same reasons that the SAC's TVPRA claim is deficient. *See supra* Section IV.B.1-3.