1   MICHAEL P. O'DAY (admitted *pro hac vice*)
    michael.oday@us.dlapiper.com
2   ELLEN E. DEW (admitted *pro hac vice*)
    ellen.dew@us.dlapiper.com
3   DLA PIPER LLP (US)
    The Marbury Building
4   6225 Smith Avenue
    Baltimore, Maryland 21209
5   Tel:   410.580.3000
    Fax:   410.580.3001
6
    AMANDA L. MORGAN (Bar No. 246277)
7   amanda.morgan@us.dlapiper.com
    **DLA PIPER LLP (US)**
8   555 Mission Street, Suite 2400
    San Francisco, CA 94105-2933
9   Tel:   415.836.2500
10  Fax:   415.836.2501

11  Attorneys for Defendant
    Marriott International, Inc.
12

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| K.R., an individual, | CASE NO. 3:19-CV-08252-VC |
| Plaintiff, | **DEFENDANT MARRIOTT INTERNATIONAL, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| G6 HOSPITALITY, LLC; and MARRIOTT INTERNATIONAL, INC., | |
| Defendants. | Date:   September 17, 2020<br>Time:   10:00 a.m.<br>Ctrm.:  4<br>Judge:  Hon. Vince Chhabria |
| | Action Filed:  December 19, 2019<br>Trial Date:    TBD |

## I. INTRODUCTION

Rather than following this Court's clear instruction to articulate "the distinction between what the employees at the local hotels knew and what the chains knew and…what the chains had control over"[1] to allege a plausible claim against Marriott International, the SAC and Plaintiff's Opposition (ECF No. 62; "Opposition" or "Opp.") double down on those pleading deficiencies.[2] In particular, there are no allegations of Marriott International's knowledge of K.R.'s trafficking. The SAC still confuses direct and vicarious liability, and conflates general knowledge of sex trafficking within the hotel industry with whether Marriott International knew or should have known of K.R.'s trafficking.

*First*, Plaintiff points to no allegations in the SAC against Starwood Hotels and Resorts ("Starwood"). Without showing predecessor liability, there can be no successor liability – which Plaintiff's authority confirms.

*Second*, Plaintiff relies on a construction of the TVPRA that turns that statute on its head, advocating liability for those who fail to stop criminal sex trafficking, instead of those who knowingly participate in such trafficking ventures. Even the opinions on which Plaintiff relies reject her untenable construction of the statute.

*Third*, Plaintiff's reliance on Marriott International's supposed "constructive knowledge" of sex trafficking is equally flawed. The "split" in authority (Opp. at 7-8) over construing the TVPRA is immaterial to Plaintiff's claim. Whether civil liability turns on the commission of an overt act, or on mere proof that defendant "should have known" of K.R.'s trafficking – the SAC fails. Recently, a federal court adopting the latter position explained that Plaintiff's reading of the TVPRA "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels, Int'l Inc.*, No. 19-6071, ECF No. 66, at *8 (E.D.N.Y. July 20, 2020) (hereinafter, "*S.J.*"). In other words, even if "constructive knowledge" suffices

---

[1] Transcript of June 4, 2020 Motions Hearing, ECF No. 52, at 38:10-23.

[2] Plaintiff's opposition does not even address the CTVPA claim, thereby conceding the issue. *Roy v. Contra Costa Cty.*, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail.").

1  (Opp. at 1-2), the TVPRA requires knowledge of "the particular sex trafficking venture" that
2  exploited K.R., not merely "an abstract awareness of sex trafficking in general." *S.J.* at *8; *see*
3  *also B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *6
4  (N.D. Cal. July 30, 2020) (hereinafter "*B.M.*") ("Plaintiff must allege facts showing these
5  Defendants knew or should have known of *her* trafficking") (emphasis added); *J.B. v. G6*
6  *Hospitality, et al.*, 19-cv-07848-HSG, ECF No. 132, at 16 (N.D. Cal. Aug. 20, 2020) (dismissing
7  TVPRA claim because "while Plaintiff's allegations suggest that Economy Inn quite possibly
8  should have been aware of some nefarious conduct, they do not suggest that Economy Inn should
9  have known that the venture constituted sex trafficking"). A TVPRA claim in a similar complaint
10 was recently dismissed where plaintiff's counsel conceded that the complaint failed to state a
11 direct claim against the franchisors. *C.K. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No:
12 3:19-cv-1412-j-34-MCR (M.D. Fla.), ECF No. 125 (July 7, 2020).
13       *Fourth*, Plaintiff's theory of indirect liability fares no better. The Opposition wrongly
14 asserts federal common law and California law are coterminous. Based on this erroneous
15 assertion, the SAC fails to allege facts that Marriott International exercised the requisite control to
16 establish its franchisee as an agent. Plaintiff cites no allegations of day-to-day control over the
17 instrumentality of K.R.'s harm or the manner of management of the Westin San Francisco Airport
18 Hotel (the "Hotel"). Further, the SAC does not sufficiently allege ratification. After three deficient
19 complaints, the Court should now dismiss the claims against Marriott International with prejudice.
20 **II.    THE SAC DOES NOT ALLEGE SUCCESSOR LIABILITY**
21       It is a basic tenet of successor liability that there must first be sufficient allegations of
22 *predecessor* liability. *See* Mot. at 5; *see also CenterPoint Energy, Inc. v. Superior Court*, 157 Cal.
23 App. 4th 1101, 1120 (2007) (the first element for successor liability is that "the successor [agrees]
24 to assume the subject liability"). Plaintiff's cited authorities confirm this fundamental element. In
25 *Pac. Rollforming, LLC v. Trakloc Int'l, LLC*, the court analyzed the sufficiency of fraud
26 allegations against the predecessor before turning to plaintiff's allegation that the successors were
27 "liable for these alleged material non-disclosures as [ ] successors-in-interest." No.
28 07CV1897LJMA, 2008 WL 4183916, at *1, 3 (S.D. Cal. Sept. 8, 2008). Similarly, the court in

1  *Monaco v. Bear Stearns Companies* discussed at length the allegations of liability against the
2  predecessor before considering whether the successor assumed such liability.  No. CV 09-05438
3  SJO JCX, 2011 WL 4059801, at *7-12 (C.D. Cal. Sept. 12, 2011) (analyzing whether complaint
4  sufficiently alleges liability of the predecessor-in-interest).

5        Yet although the basics of successor liability are not disputed here, the SAC contains no
6  facts to allege a plausible claim for the liability of Starwood for Plaintiff's trafficking.  Indeed, the
7  SAC does not even allege any policy, act, omission, or statement by Starwood during the period of
8  Plaintiff's alleged trafficking. The Opposition focuses solely on whether Marriott International
9  *assumed* any such liability. But assumption of liability is irrelevant if there are no facts alleging
10 Starwood's liability in the first instance. *Cf. CenterPoint Energy*, 157 Cal. App. 4th at 1120. Thus,
11 even assuming Marriott International assumed Starwood's liabilities, the SAC fails to allege a
12 plausible claim against Starwood upon which successor liability could be based.

13       The Opposition requests leave to amend to allege "Starwood's control over the Westin
14 property prior to Marriott's ownership." Opp. at 4-5. This request should be denied for three
15 reasons.  *First,* Plaintiff has been aware that her claim against Marriott International is based, at
16 least in part, on successor liability since filing this lawsuit in December 2019.  *See* ECF No. 1, at
17 ¶ 10(a) (alleging that Marriott International "retains successor liability for the wrongful acts of the
18 predecessor" Starwood).  *Next*, Marriott International previously challenged the basis for
19 successor liability yet Plaintiff failed to include allegations in the SAC to cure this defect. At the
20 June 4, 2020, hearing on the Motion to Dismiss the First Amended Complaint, counsel for
21 Marriott International raised this issue. *See* ECF No. 52 (transcript of June 4 hearing) at 28:14-24
22 ("prior to 2016, Starwood was a completely different company from Marriott. . . . So talking about
23 what Marriott did back in 2006 . . . we don't believe is a fact that helps prove any type of -- of
24 claim here"). Plaintiff has been aware of the issue since filing her original complaint and has failed
25 to cure this pleading deficiency despite having two prior opportunities to do so.  She should not be
26 afforded a fourth opportunity to plead her claim.

27       *Finally*, even if Plaintiff could (within the confines of Rule 11) make the same allegations
28 against Starwood that are alleged against Marriott International, the SAC fails to state a claim for

the reasons explained in the Motion and below. Thus, amendment is futile and should not be permitted. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. MARRIOTT INTERNATIONAL IS NOT DIRECTLY LIABLE TO K.R.

#### A. Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code.

The crux of the Opposition is that Congress intended, by amending the TVPRA, to require businesses like Marriott International to "take proper action to address, recognize, or prevent trafficking at its brand hotels." But Plaintiff's sweeping construction of the TVPRA is plainly incompatible with the statute's text. Section 1595(a) imposes civil liability on "whoever *knowingly* benefits, financially or by receiving anything of value from *participation* in a *venture which* that person knew or should have known *has engaged in an act in violation of this chapter*)." (emphases added).[3] Thus, civil liability under Section 1595(a) requires *knowingly* (1) benefitting from and (2) *participating* in (3) a sex trafficking *venture*. The Opposition, however, effectively deletes the words "participation in a venture" from the statute. As other courts have held, this reading makes no sense; to give these words meaning and effect, nonfeasance cannot give rise to civil liability under the TVPRA.[4]

Plaintiff does not deny that her claim must be dismissed under this standard. Instead, she misplaces reliance on another line of cases, purportedly standing for the proposition that "a defendant need not commit an 'overt act' to participate in a venture and [ ] defendant need not have actual knowledge of participation in sex trafficking itself to participate in a venture." Opp. at

---

[3] The "chapter" referred to is Chapter 77 of Title 18 of the United States Code, i.e., 18 U.S.C. §§ 1581 et seq., including sex trafficking.

[4] The Opposition does not substantively rebut the Motion's plain language argument that Section 1595 requires participation in a *sex trafficking* venture. *See* Opp. at 7-9; Mot. at 9-11. Judge Orrick and Judge Freeman found only that the definition in Section 1591(e)(4) does not control Section 1595. *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020); *B.M.*, at *3. But those findings are not applicable to Marriott International's statutory construction argument, which is based on the plain language, not Section 1591(e)(4).

7-9. In fact, these cases undermine Plaintiff's reading of the TVPRA.

For example, in *A.B. v. Marriott International, Inc.*, No. 19-5770 (E.D. Pa. April 22, 2020), ECF No. 21-1 (hereinafter, "*A.B.*"), the court explained:

> We disagree with [plaintiff] to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels …to affirmatively stop the trafficking.

*Id*. at 11; *see also B.M.*, at *7 ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking"). Moreover, the *A.B.* court explained that "only general conduct in the hotel industry" is not enough:

> [The complaint] inartfully includes numerous allegations regarding the problem of sex trafficking generally, the use of hotel and motel rooms as a venue for trafficking, efforts by private organizations and the Department of Homeland Security to combat human trafficking, and news reports on sex trafficking incidents involving other victims and other hotels. If A.B. made only these allegations, we may agree with Marriott. *Id*. at 26.

Here, the SAC here relies precisely on these "inartfully" pleaded allegations regarding general conduct in the hotel industry: statistics, news articles, and policy reports on human sex trafficking (SAC ¶¶ 46-71), allegations concerning Marriott's general knowledge of sex trafficking within the hospitality industry (SAC ¶¶ 72-86), and alleged awareness of largely different crimes committed in other states (SAC ¶¶ 87). None of these general allegations relates to the alleged wrongdoing carried out against K.R. by her trafficker. Even under the construction Plaintiff proposes, the allegations fail to state a claim. *See B.M.*, at *6 ("The Complaint fails to allege facts as to how [the franchisors] knew or should have known Plaintiff was being trafficked. To support her direct liability theory, Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking[.]").

### B. Even If Constructive Knowledge Suffices, the SAC Does Not Plead Allegations Suggesting Marriott International Should Have Known of K.R.'s Trafficking.

None of the authorities cited in Plaintiff's Opposition hold that a defendant may be liable without knowledge of the particular sex trafficking venture which harmed the plaintiff.  To the contrary, under any accepted reading of the TVPRA, courts have required actual or constructive

knowledge of the sex trafficking of the *specific* plaintiff. As one federal court recently explained:

> [T]o conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess." Indeed, under plaintiff's theory, the liability of franchisors – which are further removed from the sex trafficking than the actual hotels are – would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general.
>
> The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture. The statutory text speaks in singular terms – "participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter." 18 U.S.C. § 1595(a) (emphases added). Therefore, knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA. Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.

*S.J.* at *8 (emphases in original). Similarly, plaintiff's counsel, in another case with TVPRA claims nearly identical to the SAC here, conceded that the complaint did not state a direct TVPRA claim against Marriott International and other hotel franchisors. *See C.K. v. Wyndham Hotels & Res., Inc., et al.*, 19-cv-01412-MMH-MCR, ECF No. 125, Order (M.D. Fla. Jul. 7, 2020). While the Opposition falsely avers that Marriott International asks the Court to "turn a pleading standard of plausibility into a probability" (Opp. at 1), it is actually Plaintiff who asks the Court to go well beyond even the most generous possible reading of the TVPRA by converting the "should have known" standard into a conceivably "might have been able to guess" standard.

Consistent with this rationale, and contrary to the Opposition's suggestion, the authorities cited by Plaintiff found potential liability only where the defendant had actual or constructive knowledge of the "particular sex trafficking venture" that victimized the plaintiff. *See, e.g., Bistline v. Parker,* 918 F.3d 849, 874 (10th Cir. 2019) (co-conspirators' scheme for the express purpose of concealing the "forced labor and ritual rape of young girls"); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (co-conspirators exchanged "high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances" showing they were aware of the "abusive treatment" of the plaintiff as a "sex slave"); *H.H. v. G6 Hosp., LLC*, 2:19-CV-755,

1  2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019) (a "member of the hotel housekeeping staff …
2  discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being
3  trafficked and despite the Plaintiff's desperate pleas for help, the staff person ignored her");
4  *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019) (enterprise intended
5  to conceal their co-conspirators' rape of the plaintiffs, including by "making false and corrupting
6  statements to Congress."). Even if the Court were to apply the reasoning of these cases to the
7  SAC, Plaintiff has failed to allege any facts showing Marriott International's actual or constructive
8  knowledge of her particular sex trafficking.

9  Marriott International does not ask this Court to "apply a criminal standard to civil
10 liability" to obtain dismissal of the TVPRA claim. Opp. at 8. The Court need only apply well-
11 settled pleading standards and the plain language of the TVPRA to the SAC. The SAC fails this
12 test. The Opposition only points to Marriott International's general knowledge of sex trafficking,
13 unrelated to K.R. (*see* Opp. at 9-10 (citing SAC ¶¶ 67, 82-91, 130, 150, 151)); and that K.R.'s
14 trafficking allegedly occurred at the Hotel (*see* Opp. at 9-10 (citing SAC ¶¶ 37, 38, 40)). But the
15 Opposition ignores a crucial missing element – there is no allegation any *Marriott International*
16 employee witnessed any sex trafficking signs related to K.R., nor that Marriott International
17 should have discovered her specific trafficking through other means. As Judge Orrick recognized,
18 Plaintiff is "confus[ing]" direct and vicarious liability. *See J.C.*, 2020 WL 3035794 at *1.[5]

19 **C.   Marriott International Did Not Knowingly Benefit From The Venture.**

20 Lastly, Marriott International did not "knowingly" benefit from the illegal venture. The
21 SAC alleges that Marriott International received a royalty calculated as a portion of overall
22 revenues from the Hotel where K.R. was allegedly trafficked.  As discussed above, however,
23 Marriott International did not know, nor should it have known, that any portion of that revenue
24 was derived from criminals who were trafficking K.R. *See supra* Part III.B.  The Opposition relies
25 on cases that find the "knowingly benefits" element "merely requires that Defendant knowingly
26 receives a financial benefit" and nothing more. That reading of Section 1595(a) is incompatible

27
28 ---
[5] The Opposition does not dispute that SAC ¶ 160 should be disregarded as it is made upon "information and belief" without explaining the basis of Plaintiff's belief. *See* Mot. at 7-8.

with the text of the statute, effectively nullifying key words (here, "knowingly"). Having had no contact with K.R.'s trafficker, it did not—and could not—knowingly receive anything from K.R.'s trafficker. The better construction of this element is that it requires "knowledge as to the benefit received *from trafficking*," and allegations supporting that element (properly construed) are absent. *Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (Dkt. No. 275 at 8) (emphasis added).

## IV. MARRIOTT INTERNATIONAL IS NOT INDIRECTLY LIABLE TO K.R.

### A. The SAC Does Not Sufficiently Allege the Hotel Is The Agent Of Marriott International

The Parties agree that federal common law determines whether Marriott International can be vicariously liable for the acts of its franchisee at the Hotel, if the TVPRA even allows for such secondary liability.[6] Nonetheless, Plaintiff failed to plead factual allegations of Marriott International's actual control of the Hotel necessary to satisfy the federal standard. Federal common law "emphasizes actual exercise of control, not right to exercise control." *Ambrose v. Avis Rent a Car Sys. Inc.*, 2014 WL 6976114, at *10 (C.D. Cal. Dec. 8, 2014). Indeed, the cases Plaintiff cites which apply the federal standard confirm that: "In determining whether vicarious liability may be imposed, the 'extent of the control exercised by the principal' is the 'essential ingredient.'" *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (quoting *U.S. v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)); *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) ("Whether an agency relationship exists [ ] depends on the level of control a principal exerts over the agent."). Despite this, Plaintiff wrongly asserts that the federal common law of agency is coterminous with California law by citing a case that applied

---

[6] The Opposition's attempt to distinguish *Jean Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013) is unavailing. That court relied on the fact that "the text of a federal statute [is] dispositive in determining whether it provides for secondary liability." *Id.* at 281 (citing *Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685, 689 (7th Cir.2008)); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 201 (1994)). Section 1595(a) is silent as to both aiding and abetting and as to whether franchisor liability can be extended based on the alleged participation by staff in a venture with criminal traffickers, that is imputed to a franchisee, and in turn imputed to a franchisor – three steps removed from the criminal trafficker.

*New York* common law. Opp. at 12 (citing *Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 342 (S.D.N.Y. 2018)); *see also Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Circ. 2019) (noting "vicarious liability and agency principles under California law...[are] distinct from principles articulated in the Restatement and from federal common law.").

Just as the federal common law agency standard requires a plaintiff to demonstrate that the principal controls the "manner and means" of the agent's activities (*see Thomas v. Taco Bell Corp.* 582 F. App'x 678, 679 (9th Cir. 2014)), determining agency in the franchisor-franchisee context depends on the franchisor's actual exercise of day-to-day control over the particular instrumentality of the harm. And the SAC fails to make these allegations. Apart from conclusory statements and legal conclusions (SAC ¶¶ 11(d), (h), (i), 127, 147, 148, 157), the SAC does not include a single factual allegation demonstrating that Marriott International controlled the day-to-day operations of the front desk, housekeeping, security, or any other instrumentality of the hotel's operations implicated in Plaintiff's alleged harm when she was allegedly trafficked. Rather, without citing the SAC, the Opposition posits that the instrumentality of Plaintiff's harm was Marriott International's "control over" the Hotel's training policies and its "monitoring (or ability to monitor) and control of guest internet usage and access." Opp. at 14, n. 30.

This attempt fails. *First*, control over employee training is insufficient for agency liability.[7] And the SAC acknowledges Marriott International *did not* exercise control regarding "training sessions on human trafficking." SAC ¶ 131. Thus, it is not plausible that the instrumentality of Plaintiff's harm derived from Marriott International's purported control over training. *Second*, Marriott International's (current[8]) internet Terms of Use and Privacy Notice

---

[7] Plaintiff cannot meaningfully distinguish the cases Marriott International relies on in finding general agency allegations insufficient: *N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019); *Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015); *Cha v. Hooters of Am.*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012). These cases show that allegations of day-to-day control are required. The SAC has only alleged day-to-day control in conclusory fashion and through speculation.

[8] The Opposition's reliance on the current website Terms of Use ("That the policy cited in Plaintiff's SAC is current is of no consequence as Plaintiff has plausibly alleged that any similar policy existed at all relevant times in the complaint") also fails as the Opposition cannot cite a paragraph where the SAC makes this allegation – because it does not exist.

cannot plausibly demonstrate the exercise of actual control over the Hotel at the time of her alleged trafficking (when it was part of a different hotel brand). Marriott International does not control or monitor that service, in any event. Moreover, it is likewise implausible that a routine internet Terms of Use policy could be the instrumentality of Plaintiff's harm – indeed, there is no allegation that her traffickers ever used the Hotel's internet for any purpose, including as part of her trafficking. Plaintiff used her opportunity to amend to plead her "best shot" by adding these meritless allegations which do not support her claim and further conflate her theory of liability. Having wasted the opportunity to amend, she should not be allowed another attempt.

### B. The SAC Has No Allegations Of Ratification

The Opposition concludes by arguing the SAC sufficiently alleges Marriott International ratified the conduct of the Hotel. Yet the SAC does not bring a claim based on this theory and the Opposition fails to cite a single allegation to support it. *See Cupp v. Harris*, No. 216CV00523TLNKJN, 2018 WL 4584202, at *3 (E.D. Cal. Sept. 21, 2018) ("It is simply not the Court's job to sift through voluminous allegations to attempt to determine whether there may be a possible hidden cause of action."). Regardless, the SAC does not support a theory of ratification through "actual knowledge" or "willful blindness." *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). There are no allegations Marriott International had "actual knowledge" of "the acts of the purported agent" – indeed, it is not plausible Marriott International even *should have known* of K.R.'s trafficking, let alone consented to the involvement, if any, of the Hotel. And Marriott International was not "willfully blind" to K.R.'s trafficking. Plaintiff relies only on "Marriott's knowledge about sex trafficking and publicly stated polices" *in general* to divert from the lack of allegations of Marriott International's knowledge of, or willful blindness to, *K.R.*'s trafficking which is alleged to have occurred at a time when the Hotel was not even part of the Marriott brand. This is insufficient. *Cf. S.J.*, at *8.

### V. CONCLUSION

For the foregoing reasons, Marriott International respectfully requests that this Court dismiss the Plaintiff's claims against Marriott International with prejudice and grant such other and further relief as the Court deems just and proper.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: August 27, 2020 | DLA PIPER LLP (US) |
| 3 | | |
| 4 | | By: _____ |
| 5 | | MICHAEL P. O'DAY (admitted *pro hac vice*) |
| 6 | | ELLEN E. DEW (admitted *pro hac vice*) <br> AMANDA L. MORGAN |
| 7 | | Attorneys for Defendant <br> Marriott International, Inc. |